LESKI *v.* STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY.

1. INSURANCE—AUTOMOBILES—FARM TRACTORS—COVERAGE.
    Provision of automobile insurance policy wherein definition of
    automobile specifically excluded coverage of "a farm type
    tractor or other equipment designed for use principally off
    public roads, except while actually upon public roads" intended
    to exclude coverage of a farm tractor while in its ordinary
    place of usage but extended coverage to its operation on the
    road while going to and from farms or when used on the road
    for hauling.

2. SAME—CONSTRUCTION OF POLICY—AMBIGUITY.
    Courts should construe policies of insurance which are not stand-
    ard policies strictly or most strongly against the insurer in
    case of reasonable uncertainty, doubt, or ambiguity.

3. SAME—AUTOMOBILES—FARM  TRACTOR—PUBLIC  HIGHWAY—CON-
    STRUCTION OF POLICY.
    The term *while actually upon a public highway,* as used in auto-
    mobile insurance policy in clause extending coverage to farm
    tractors so used, is construed most strongly against the insurer
    so as to cover fatal injuries to insured's son received while
    operating the tractor en route to farm across an interstate
    public highway while on the right-of-way in a place which
    could be used for travel although not intended for normal
    travel use, some less than 2 months before the highway was
    officially opened for public use although there was evidence
    of common and recent usage of the route followed by decedent,
    such policy provision being an ambiguous one.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 5A Am Jur, Automobile Insurance §§ 2n, 7n, 27, 28.
    What is an "automobile" or a "car" within coverage of automobile
    liability policy. 74 ALR2d 1264.
[2, 3, 5] 5A Am Jur, Automobile Insurance § 3.
[4] 3 Am Jur, Appeal and Error §§ 899, 900.

4. APPEAL AND ERROR—NONJURY CASES—CLEAR WEIGHT OF THE EVI-
DENCE.
    The Supreme Court does not reverse the determination of the
trial court in a nonjury case unless it is found that the judg-
ment rendered is contrary to the clear weight of the evidence.

5. INSURANCE—AUTOMOBILES—FARM TRACTORS—PUBLIC HIGHWAY—
AMBIGUITY.
    Trial court's finding of ambiguity in clause of automobile in-
surance policy extending coverage to operation of farm tractors
*while actually upon a public highway held*, to support judg-
ment for insured for fatal injuries to her son while operating
such a tractor within the right-of-way of an interstate highway
less than 2 months prior to its official acceptance although
on a place not ever intended for public travel but on a route
which was not then barricaded and which had been commonly
used by parties whose destination was the same as decedent's.

Appeal from Calhoun; Magnotta (Alfonso A.), J.
Submitted June 14, 1962. (Docket No. 18, Calendar
No. 49,556.) Decided September 10, 1962.

Assumpsit by Margaret L. Leski, individually and
as administratrix of the estate of Fred R. Leski,
deceased, against State Farm Mutual Automobile
Insurance Company, a foreign corporation, for death
benefits under limited insurance policy. Judgment
for plaintiff. Defendant appeals. Affirmed.

*Hatch & Sculthorp,* for plaintiff.

*Fraser, Trebilcock, Davis & Foster,* for defendant.

KAVANAGH, J. This action was instituted to re-
cover for the death on May 8, 1960, of plaintiff's son
under defendant's policy insuring the life of plaintiff
or any member of her family.

Defendant appeals from a judgment in favor of
plaintiff entered in the circuit court of Calhoun coun-
ty following a trial by the court without a jury.

Plaintiff was the holder of a policy of defendant
State Farm Mutual Automobile Insurance Company,

which policy provided coverage up to $1,000 with respect to medical and funeral expenses incurred in connection with an accident involving injuries to the insured or a relative living in the insured's family. In addition, the policy afforded a death indemnity up to $5,000 in case of the death of an insured or a relative of the insured occurring while occupying a land motor vehicle not operated on rails or crawler-treads but excluding a farm type tractor or equipment designed for use principally off public roads, except while such tractor or equipment was actually upon public roads.

The decedent, Fred R. Leski, at the time of the accident was en route from a farm owned by his employer located south of highway I-94 in Marengo township, Calhoun county, Michigan, to another farm on the north side of the highway. The accident in question occurred within the right-of-way of highway I-94 between the cities of Marshall and Albion. This stretch of highway in the general area of the accident scene is located immediately to the west of the present Partello road interchange. As completed, the stretch of highway consists of 2 main strips of concrete pavement separated by a medial divider running in an easterly and westerly direction.

On May 8, 1960, the construction of highway I-94 was not completed and there were no fences or physical obstructions erected along the I-94 right-of-way or parallel thereto. Prior thereto, the east-west strips of the main pavement were in place, but the shoulders abutting said strips and the Partello road overpass were not completed. These strips of highway I-94 were officially opened to public vehicular travel by the State highway commissioner on July 1, 1960.

Prior to, during, and after the date of the accident, persons not connected with the construction

of the highway or the State highway department utilized the main strips of I–94 for vehicular transportation, although without the approval of the State highway department. On at least 1 occasion, only 2 or 3 days after the accident, the project engineer offered to let a private vehicle travel from the city of Albion to the Partello road interchange on I–94.

Plaintiff's decedent, Fred R. Leski, in going from one farm to the other, drove the tractor from the farm situated to the south of the right-of-way across the east-west concrete strip and medial divider in a general northerly direction until he reached the north edge of the earthen embankment constituting the grade denominated as ramp "C" of the interchange. At that point, his tractor was turned in a northeasterly direction and was driven approximately 500 feet on a course generally paralleling the curvature of partially completed ramp "C". At a point on the northern-most arc of the grading of ramp "C", decedent again turned his tractor in a northerly direction and entered into a ditch. While attempting to climb the northerly embankment of the ditch, to go into a field, the tractor, due to the incline and soft ground, tipped backward toward the south inflicting fatal injuries to decedent.

The place where the accident occurred was situated within the right-of-way of I–94, and the northerly bank of the ditch was situated approximately 32 feet north of the presently paved portion of ramp "C" and approximately 24 feet north of the now constructed north shoulder of ramp "C". It is admitted that the situs of the accident was not situated within that part of highway I–94 intended or designed for vehicular traffic, but it is also admitted that it is conceivable that under abnormal or emergency conditions a motor vehicle might enter upon or travel over the place where the accident occurred.

Stipulated facts indicate that the plaintiff and her family, including the decedent and numerous others, used the temporary Partello road crossing of I–94 almost daily. In order to gain access to 19 Mile road, it was necessary for them, after crossing I–94 and joining Partello road, to turn southwesterly and travel upon the fill dirt or earthen embankment used for the approach for the bridge which was to be built. This mode of access to 19 Mile road was expressly authorized by the State highway department. The earthen embankment or approach was joined by ramp "C". Ramp "C", however, was not open to traffic on that date. No permission had been given to decedent by the State highway department to use the highway or highway right-of-way on or prior to the date of the occurrence of the accident.

However, plaintiff's witness, Jerry Elyea, testified that approximately 1 month prior to the accident in question he drove a tractor from the Elyea home to their land north of I–94 using almost exactly the same route as decedent. En route he conversed with members of the highway construction crew and then proceeded on the tractor to the northerly Elyea land. He was not stopped by the construction crew nor told not to cross the highway at that point.

Ruth Elyea testified for plaintiff that approximately 3 days after the accident she was approached by a representative of the State highway department, who informed her that persons working the Elyea farm were not to cross the highway.

Plaintiff Margaret L. Leski, mother of decedent, testified that prior to and on the date of the accident there were no barricades or barriers on I–94 at the Partello road interchange. She further testified that going to and from her employment she observed this interchange on the average of 4 times daily, and that wire barricades were placed immediately to the east and west of temporary Partello road where it

crossed the main strips of I–94 within 1 week following the accident.

The sole question in this case is: Can the language of coverages "C" and "S" of defendant's insurance policy providing medical and accidental death benefits in connection with certain operations of a farm tractor *"while actually upon public roads"* be reasonably construed to include the situs of the accident causing the death of plaintiff's decedent, Fred R. Leski?

The policy in question provided:

"INSURING AGREEMENT—THE OWNED AUTOMOBILE.
\* \* \*

"Coverage C—Medical payments. To pay reasonable expenses incurred within 1 year from the date of accident for necessary medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and funeral services, eyeglasses, hearing aids and prosthetic devices:

"Division 1. To or for the named insured and each relative who sustains bodily injury, caused by accident, while occupying or through being struck by the owned automobile, or any other land motor vehicle or trailer not operated on rails or crawler-treads, but not (1) a farm type tractor or equipment designed for use principally off public roads, except *while actually upon public roads.* \* \* \*

"Conditions—Insuring Agreements 1 and 2.
\* \* \*

"The company may pay the injured person or any person or organization rendering the services and such payment shall reduce the amount payable hereunder. Any payment shall not constitute admission of liability of the insured or company. \* \* \*

"INSURING AGREEMENT 4—AUTOMOBILE DEATH INDEMNITY, SPECIFIC DISABILITY AND TOTAL DISABILITY INSURANCE.

"Coverage S.

"Division 1—Death indemnity. To pay the principal sum stated as applicable in the exceptions of the declarations in event of the death of each insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while occupying or through being struck by an automobile, provided the death shall occur:

"(1) within 90 days from the date of such accident, or

"(2) within 1 year after the date of the accident and during a period of continuous total disability as defined under coverage T. * * *

"DEFINITIONS—INSURING AGREEMENT 4 * * *

"Automobile—means a land motor vehicle, trailer, or semitrailer not operated on rails or crawler-treads, but does not mean: (1) a farm type tractor or other equipment designed for use principally off public roads, except *while actually upon public roads.*" (Emphasis supplied.)

The trial court found in its opinion that the provision "while actually upon public roads" in the insurance policy in question was ambiguous and that a fair interpretation of this provision of the contract would include the situs of the accident in the instant case, and rendered a judgment in the amount of the policy.

Defendant contends the policy in question is an automobile insurance policy and not a policy generally covering the operation of farm tractors of the type here involved. Defendant also says farm tractors of this type are expressly excluded from coverage under the policy unless, and only unless, the accident occurs while the farm tractor is actually upon public roads.

Defendant contends the conclusion is, therefore, inescapable that the manifest underwriting intent was to exclude from coverage of the policy the risks normally attending the operation of a farm tractor

in its ordinary place of usage. To this extent we agree. A description of the ordinary place of usage would be in and about the fields and premises of a farm. Admittedly, this accident did not occur in such a place. What, then, did the underwriter intend? It seems clear that it intended to extend the coverage to operation of a farm tractor in other than its ordinary place of usage; in other words, in a type of operation in which the tractor would be used on the road going to and from farms or when used on the road for hauling.

In arriving at a construction of the language in an insurance contract, it is a well-established rule that, in case of reasonable uncertainty, doubt, or ambiguity, courts should construe policies of insurance which are not standard policies strictly or most strongly against the insurer. See *Century Indemnity Co.* v. *Schmick,* 351 Mich 622; *Francis* v. *Scheper,* 326 Mich 441. In view of the apparent uncertainty and doubt which surrounds the provisions of the policy in this case, we apply the above rule of law.

The trial court found as a matter of fact, and it is supported by the record, that others besides decedent used this same route to pass from ramp "C" to the field, although at the time of such use it was not a road officially opened to public travel by the State highway department.

Several witnesses testified of the common usage of the area of the interchange in its incomplete state to pass from one side of the more than 1/4-mile-long interchange to the other.

Defendant contends that a proper construction of the critical policy language "while actually upon public roads" should be in terms of what a layman would understand these words as meaning in everyday parlance. We believe that a reasonable understanding of the preceding language by a layman would be

that he was purchasing a policy of insurance that would protect him in the event of an accident at the place and in the manner which caused decedent's death.

The cases cited by both plaintiff and defendant and the dictionary definitions of the word "public" and the word "road" are not applicable in this case. Here we are determining what construction the parties placed upon these critical words at the time of purchase of the policy. We believe a reasonable interpretation is the one applied by the trial court, and that had the defendant insurance company desired to exclude the situs of the accident it would have been a simple matter for it to do so.

The fact we are dealing with a farm tractor in other than its ordinary place of usage, the fact that we are construing an insurance contract provision that is uncertain or at least doubtful, the fact that we are dealing with a record that discloses some common usage of the area where the accident occurred, the fact that we are dealing with the provisions of an insurance contract which must be construed most strongly against the insurer, and the fact that at least 1 reasonable interpretation of the provision involved would include the situs of the accident, leads us to the conclusion that the finding of the trial court was supported by the record.

We do not reverse in a case tried by the court without a jury under these circumstances unless we find that the judgment is contrary to the clear weight of the evidence. A reading of this record does not bring us to such a conclusion.

The judgment of the trial court is affirmed. Plaintiff shall have costs.

CARR, C. J., and DETHMERS, KELLY, BLACK, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.