**Warren BLOOMQUIST, et al.,
Respondents,**

v.

**NWNL GENERAL INSURANCE
COMPANY, Appellant.**

No. C3–87–2042.

Court of Appeals of Minnesota.

April 5, 1988.

Review Denied June 10, 1988.

Kay Nord Hunt, Richard A. Lind, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for respondents.

Mark A. Gwin, Robert J. McGuire, Cousineau, McGuire, Shaughnessy & Anderson, Chartered, Minneapolis, for appellant.

Heard, considered, and decided by NIERENGARTEN, P.J., and SEDGWICK and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

Respondents Warren Bloomquist and his son Daren Bloomquist brought this declaratory judgment action against appellant NWNL General Insurance Company ("NWNL") seeking uninsured motorist coverage under the terms of an automobile insurance policy. This appeal is from a judgment and an amended judgment granting the Bloomquists' motion for summary judgment and denying NWNL's motion for summary judgment. We reverse.

## FACTS

On March 12, 1985, Daren Bloomquist (hereafter "Bloomquist") pitched his tent on a beach located in the Andy Bowie Park, Cameron County, South Padre Island, Texas. The beach runs generally north-south, with two access roads at each end running east from a main north-south road. Vehicles traveled along the beach between these access roads. It is undisputed that Bloomquist pitched his tent in the loose sand between a camper and a 12–person tent, north of the southernmost access road. At noon on March 17, an uninsured all-terrain vehicle ran over him while he was sleeping in his tent.

The policy issued by NWNL to Bloomquist's father provided uninsured motorist coverage, but stated that the term "uninsured motor vehicle" did not include any vehicle "[d]esigned mainly for use off public roads *while not on public roads*" (emphasis added). Coverage in this case depends on whether or not the accident occurred on a public road.

In support of his motion for summary judgment, Bloomquist submitted a deposition in which he testified that there were no designated places to camp on the beach, that there were no signs or markers of any kind that would channel traffic on the beach, and that vehicles drove anywhere on the beach. He also testified, however, that he understood the beach to be a "camping beach" and that at the time he pitched his tent he did not believe he was camping on a road.

NWNL submitted an order issued on May 21, 1984, by the Commissioners' Court of Cameron County, Texas, setting forth traffic regulations for the beach. Those regulations stated that traffic "shall be one-way only in a northernly direction" along the "traveled portion" of the beach between the access roads. The order was to be enforced "when * * * signs are in place, or thereafter by actual or constructive notice."

On the day set for hearing, Bloomquist presented the affidavit of Michael A. Reuwsaat, former director of the Cameron County Park System. This affidavit stated

that prior to December 1985, the one-way traffic regulation had never been enforced, that signs had not yet been erected, and that no area had been designated for one-way traffic on the beach.

In granting summary judgment to Bloomquist, the trial court stated:

An ordinance was enacted for the beach in question designating a specific roadway as follows: "Vehicular traffic shall be one-way only in a northerly direction from the intersection of the traveled portion of said beach with the first beach access road to the intersection of the traveled portion of the beach with the second access road." Defendant argues that the accident occurred to the west of this roadway. However, this ordinance has no legal significance because it was never enforced and no signs were ever posted to indicate a road.

Beaches in Texas are open to automobile and various other vehicular traffic, and vehicles commonly travel the entire beach area. The Texas courts have noted that beaches have been used as public roads as far back as the mid 1800's with horse and buggies. *Seaway Co. v. Attorney General*, 375 S.W.2d 923 (Tex. [Civ.] App.1964). Because the entire beach area is traveled as a public road, the accident occurred on a public road within the meaning of the policy.

In denying NWNL's subsequent motion for reconsideration, the court further noted:

The Court's initial impression was that the matter is properly venued in Texas. At oral argument, however, the parties agreed that there were no fact issues and that the cross motions for summary judgment should be ruled on in [Minnesota].

## ISSUE

Did the trial court err in concluding that the beach where Bloomquist pitched his tent was a public road?

1. Bloomquist alternatively argues that the term "public roads" is ambiguous. We disagree. An ambiguity exists where a term is reasonably subject to more than one interpretation. *Farm-*

## ANALYSIS

On review of a grant of summary judgment, this court must determine whether the trial court erred in its interpretation of the law and whether there are any genuine issues of material fact. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). Because the parties in this case agreed before the trial court that there were no fact issues, we are presented with an issue of law.

Where no ambiguity exists,[1] the terms of an insurance contract must be given their plain, ordinary, and popular meaning. *Ostendorf v. Arrow Insurance Co.*, 288 Minn. 491, 495, 182 N.W.2d 190, 192 (1970). The terms must be construed in such a manner as to give effect to the intention of the parties as it appears from the contract. *Canadian Universal Insurance Co., Ltd. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn.1977). In determining that intention, the test is "what a reasonable person in the position of the insured would have understood the words to mean rather than what the insurer intended the language to mean." *Id.*

The policy in this case fails to define "public road," and we must look to the ordinary and popular meaning of the term. *See Aetna Insurance Co. v. Getchell Steel Treating Co.*, 395 F.2d 12, 16 n. 4 (8th Cir.1968) (where policy does not include definition of term, Minnesota courts look to dictionary meaning). The definition urged by Bloomquist and impliedly adopted by the trial court is based on evidence that beaches in Texas have historically been used by the public for vehicular traffic, as recognized in the case of *Seaway v. Attorney General*, 375 S.W.2d 923 (Tex.Civ.App. 1964). Although *Seaway* may provide evidence that the beach in this case was "public," it cannot be cited for the proposition that the place where Bloomquist pitched his tent was necessarily a "road."

*ers Home Mutual Insurance Co. v. Lill*, 332 N.W.2d 635, 637 (Minn.1983). As we shall conclude, "public road" is reasonably susceptible to only one meaning in this case.

On appeal, both parties cite Texas statutes regulating traffic on public beaches. Bloomquist notes that a person operating a motor vehicle on a public beach in Texas is subject to maximum speed restrictions, and is deemed to have given consent to the implied consent laws and is subject to the state's driving while intoxicated statutes. *See* Tex.Rev.Civ.Stat.Ann. art. 6701d, § 166(d) and art. 6701*l*–5, § 1 (Vernon Supp.1988). Bloomquist fails to mention, however, that the Texas legislature also provided a definition of "public beach" which is separate from its definitions of "highway," "street," or "roadway." Tex. Rev.Civ.Stat.Ann. art. 6701d, § 17A (Vernon Supp.1988).

Examination of these other statutory definitions supports NWNL's position that the entire beach cannot be considered a road. A "Roadway" is defined as "[t]hat portion of a *highway* improved, designed or ordinarily used for vehicular travel, exclusive of the berm or shoulder." Tex.Rev. Civ.Stat.Ann. art. 6701d, § 13(c) (Vernon 1977) (emphasis added). A "Street or Highway" is defined as "[t]he entire width *between the boundary lines* of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." Tex.Rev.Civ. Stat.Ann. art. 6701d, § 13(a) (Vernon 1977) (emphasis added). We believe that these statutes contemplate a definition of "road" which includes some sort of boundaries.

Indeed, such a definition is consistent with the dictionary definition, which generally indicates that a road is a "course" or a "path." *See, e.g., American Heritage Dictionary* 1066 (2nd College Ed. 1982); *Webster's New World Dictionary* 414 (Modern Desk Ed. 1979). We therefore hold that the ordinary and popular meaning of the term "road" contemplates some sort of boundaries, and that the entire beach in this case cannot be considered a road.

The question then arises whether Bloomquist's tent was located on a portion of the public beach which might be considered a road. Although there were no specific boundaries on the beach, it is clear that there were east-west access roads at each end. From the language of the order we may also conclude that between these two access roads there was a "traveled" portion of the beach, which ran north-south. Bloomquist testified that he pitched his tent in the soft sand about 40 feet north of the nearest access road. He also testified that at the time of the accident his tent was not isolated, and that a number of other camps had been set up near his. From this, we can only conclude that his tent was not located within the boundaries of the traveled portion of the beach. Additionally, Bloomquist himself did not believe that he was camped on a road when he pitched his tent. Given these undisputed facts, we cannot conclude that Bloomquist pitched his tent on a part of the beach which arguably might be considered a public road.

## DECISION

The trial court erred in granting the Bloomquists' motion for summary judgment and in denying NWNL's motion for summary judgment. We direct entry of judgment for NWNL.

Reversed.