888 P.2d 1363

Denise GITTINGS, Plaintiff–Appellant,

v.

AMERICAN FAMILY INSURANCE COMPANY, Defendant–Appellee.

No. 1 CA–CV 92–0264.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 23, 1994.

Review Denied Feb. 22, 1995.

Rake & Downey, P.C. by William Downey, Phoenix, for plaintiff-appellant.

Thomas, Burke & Phillips, P.C. by Benjamin C. Thomas and Craig A. McCarthy, Phoenix, for defendant–appellee.

## OPINION

JACOBSON, Presiding Judge.

The issue raised in this appeal is whether an exclusion from uninsured motorist coverage of off-road vehicles involved in off-road accidents applies to an off-road vehicle that collided with a utility pole within the right-of-way of a public road. To decide this issue, we must define the term "public roads" as it appears in the policy's exclusion.

### FACTS AND PROCEDURAL HISTORY

Appellant Denise Gittings (plaintiff) brought this action for a declaratory judgment of insurance coverage for an accident in which her husband was killed while a passenger in an off-road vehicle that collided with a utility pole within the right-of-way of Mountain Road in Maricopa County. The parties

dispute whether the vehicle was being used on "public roads" at the time of the accident; if so, the parties agree that plaintiff was entitled to benefits under the uninsured motorist (UM) coverage provisions of her policy with appellee American Family Insurance Co. (defendant).

The parties stipulated to the following facts in their cross-motions for summary judgment:

1. On November 5, 1989, William Gittings, deceased, was a passenger in an unlicensed sand rail type motor vehicle owned and operated by Jay Polk.

2. Mr. Polk collided head on with an SRP utility pole and William Gittings died as a result of injuries sustained from the collision with the utility pole.

3. The accident occurred on Mountain Road, .40 miles south of Elliot Road, Maricopa County.

4. At the location and time relevant to this case, Mountain Road was a north/south two lane asphalt road, and the area surrounding the road is open desert.

5. At the location and time relevant to this case, the right-of-way for Mountain Road was 60 feet, or 30 feet on either side of the centerline.

6. The centerline for Mountain Road is that line which bisects Section Thirteen (13), Township One (1) South, Range Seven (7) East, of the Gila and Salt River Base and Meridian, Maricopa County, Arizona.

7. The utility pole is located 14.4 feet from the edge of the pavement.

8. The utility pole is within the right-of-way for Mountain Road, approximately 1.85 feet from the right-of-way boundary.

9. The sand rail type vehicle was northbound when it struck the power pole.

10. For purposes of this Motion it is agreed that Mr. Polk had no liability insurance applicable for this accident.

11. Plaintiff Denise Gittings is the surviving spouse of William Gittings.

12. Plaintiff Denise Gittings and her deceased husband William Gittings were insured under three separate American Family Insurance policies....

13. All American Family policies included insured motorist coverage of $50,-000 each person, $100,000 each accident.

14. Under Part III of the subject policy entitled "Uninsured Motorist Coverage", American Family agreed as follows:

**We** will pay compensatory damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle.** The bodily injury must be caused by an accident and arise out of the use of the uninsured motor vehicle.

15. The Uninsured Motorist Coverage section of the American Family Policy contains the following additional definitions, including a definition for motor vehicle:

**Motor vehicle** means a land motor vehicle or trailer, but it does not mean a vehicle:

b. Which is a farm-type tractor or equipment designed for use mainly off public roads, while so used.

16. Plaintiff Denise Gittings submitted a claim for payment of the policy limits of the uninsured motorist benefits and medical expense benefits applicable to the American Family Insurance policies referenced above.

17. American Family Insurance denied Plaintiff Denise Gittings' claims on the basis that the vehicle in which Mr. Gittings was riding at the time of the accident was not on a public roadway or being operated on a public roadway.

18. The parties agree that if the vehicle in which Mr. Gittings was riding at the time of the accident *was* being operated on a public road, there is coverage; conversely, if the sand rail type vehicle *was not* being operated on a public road, there is *no* coverage.

19. The attached Accident Report, # 89–23139–963A is a true and correct

copy of the report of the accident which is the subject of this litigation.

The attached accident report contained the following notation from one of the investigating officers: "Evidence at the scene indicated that the vehicle was north bound on the west road shoulder when it struck the power pole head on."

The trial court granted defendant's motion for summary judgment. Plaintiff filed a timely notice of appeal.

## DISCUSSION

### I. Standard of Review

■ Summary judgment should only be granted when the facts produced in support of the claim have so little probative value that reasonable persons would not agree with the proponent of the claim. *Orme School v. Reeves,* 166 Ariz. 301, 310, 802 P.2d 1000, 1009 (1990). We view the facts in a light most favorable to the party opposing the motion. *Id.*

### II. Meaning of the Term "Public Roads"

■ The sole issue raised on appeal is whether the accident occurred on a public road so as to take this case out of the exclusion in the UM coverage in defendant's policy. To answer this particular question, we must first determine the scope and the bounds of "public roads" as that term is used in the exclusion in the UM coverage in the pertinent policies. Plaintiff argues the term should encompass the entire right-of-way of the road. Plaintiff contends that we should follow the definition of "street" or "highway" in the definition section of Title 28, Arizona Revised Statutes, which deals with transportation. The relevant section provides:

"Street" or "highway" means the entire width between the boundary lines of every way when any part thereof is open to the use of the public for purposes of vehicular travel.

A.R.S. § 28-101(63). Because the utility pole was within the right-of-way for Moun-

tain Road, plaintiff contends, under this definition the vehicle would have been operated on a public road and thus was not subject to the policy's exclusion for uninsured motor vehicles.

Defendant, on the other hand, urges us to adopt the narrower definition of "roadway" in the Uniform Act Regulating Traffic on Highways:

"Roadway" means that portion of a highway improved, designed or ordinarily used for vehicular travel, exclusive of the berm or shoulder. . . .

A.R.S. § 28-602(18).

■ Under defendant's definition, plaintiff would not have been on a "public road" at the time of the accident. As we explain below, we believe the most reasonable definition lies between the positions advocated by the parties, and depends on the circumstances of the accident. We do not believe this question can be disposed of by reference to statutory definitions, especially those dealing with the Department of Transportation and the highway system, as opposed to automobile insurance. We are faced here with the interpretation of an automobile insurance policy; our job in essence is to construe the parties' contract. The policy does not define the term "public roads." Thus, as with any insurance policy, the following principle applies:

The language used in an insurance policy must be viewed from the standpoint of the average layman who is untrained in the law or the field of insurance. *Droz v. Paul Revere Life Insurance Co.,* 1 Ariz.App. 581, 405 P.2d 833 (1965). Where the language in an insurance policy is subject to more than one interpretation, such policy must be construed in favor of the insured and against the insurance company that drafted the policy. *D.M.A.F.B. Federal Credit Union v. Employers Mutual Liability Insurance Company of Wisconsin,* 96 Ariz. 399, 396 P.2d 20 (1964).

*Thompson v. Government Employees Ins. Co.,* 122 Ariz. 18, 21–22, 592 P.2d 1284, 1287–

88 (App.1979). *Accord Lally v. Automobile Mut. Ins. Co.*, 114 R.I. 582, 337 A.2d 243, 245 (1975) (distinguishing interpretation of an insurance contract and construction of the term "public road" used in statutes regulating highways); *Bloomquist v. NWNL Gen. Ins. Co.*, 421 N.W.2d 416, 418 (Minn.App. 1988) (looking to ordinary meaning of "road").

Our research has not disclosed a case directly on point, although some have touched on the issue. In *Lally*, the plaintiff was injured on a public sidewalk by a motorized "go-cart." 337 A.2d at 245. She sought payment under the medical payments and uninsured motorist coverages of her policy. These provisions excluded "bodily injury sustained ... through being struck by equipment designed for use principally off 'public roads,' unless at the time of the accident ... an ordinarily excluded vehicle was operating on a 'public road.'" *Id.* The insured contended that, because the sidewalk was part of the "public road," she was covered. The Rhode Island Supreme Court rejected this argument:

> Used in this context a public road connotes that portion of the public way ordinarily used for vehicular traffic, in contradistinction to the 'sidewalk' area between the curb lines and adjacent property lines customarily designed for and used by pedestrians. In our view, this is undoubtedly the meaning that an average reader or purchaser of a policy like the one in issue would attribute to that term.

*Id.*

*Bloomquist* also involved an off-road vehicle exclusion to an uninsured motorist provision. The named insured's son was injured when an uninsured all-terrain vehicle ran over him while he was asleep in a tent pitched on a beach on South Padre Island, Texas. The tent was pitched 40 feet north of the nearer of two east-west access roads. Plaintiffs argued that the son pitched his tent on a public road because "beaches in Texas have historically been used by the public for vehicular traffic." 421 N.W.2d at 418. The Minnesota Court of Appeals rejected this argument, holding instead "that the ordinary and popular meaning of the term 'road' contemplates some sort of boundaries, and that the entire beach in this case cannot be considered a road." *Id.* at 419.

Perhaps the case that has the most similar facts to this one, although certainly not a close match, is *Leski v. State Farm Mutual Automobile Insurance Co.*, 367 Mich. 560, 116 N.W.2d 718 (1962), which involved insurance coverage written on a farm tractor. The policy had two provisions that excluded "a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads...." *Id.* 116 N.W.2d at 720. The decedent was killed on the tractor when he attempted to climb the northerly embankment of a ditch on the north side of an interstate highway that, although not officially opened to the public, had been frequently traversed by several local vehicles. In going from one farm to another, he crossed the east-west highway from the south to the north. When he reached the north edge of an earthen embankment that was part of an interchange ramp, he turned northeasterly, driving approximately 5000 feet on a course paralleling the curve of the partially completed ramp. At the northernmost point of the arc, he again turned north, entering a ditch. "While attempting to climb the northerly embankment of the ditch, to go into a field, the tractor, due to the incline and soft ground, tipped backward toward the south inflicting fatal injuries to the decedent." *Id.* 116 N.W.2d at 719.

The Michigan Supreme Court described the policy as one that covered the tractor "in other than its ordinary place of usage." *Id.* 116 N.W.2d at 721. Based on that description, it held that the tractor was being operated on a public road at the time of the accident:

> The fact we are dealing with a farm tractor in other than its ordinary place of usage, the fact that we are construing an insurance contract provision that is uncer-

tain or at least doubtful, the fact that we are dealing with a record that discloses some common usage of the area where the accident occurred, the fact that we are dealing with the provisions of an insurance contract which must be construed most strongly against the insurer, and the fact that at least one reasonable interpretation of the provision involved would include the situs of the accident, leads us to the conclusion that the finding of the trial court was supported by the record.

*Id.*

Given the definition of "public road" that we ultimately adopt on the basis of Arizona case law, we conclude that the legal reasoning of *Leski* does not support summary judgment in plaintiff's favor under the facts of this case.[1]

*Salinas v. Kahn,* 2 Ariz.App. 181, 407 P.2d 120 (App.1965),[2] involved a collision between two trucks on an interstate highway. The defendant's—Allan Arthur Transportation's—truck, driven by Pete Salinas, developed engine trouble and Salinas pulled it onto the paved shoulder or emergency parking lane. Several hours later, an Allied Van Lines truck driven by Robert Branam ran into the rear of the Allan Arthur truck, killing Branam and his passenger. In three actions consolidated into one trial, the jury found Salinas and Allan Arthur (appellants) negligent, and they appealed. The appellants contended there was no evidence from which a jury could conclude they were negligent and claimed error in the giving of the following instruction, quoting from A.R.S. § 28–871:

'Upon any highway outside of a business or residence district no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practicable to stop, park or so leave the vehicle off that part of the highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of the stopped vehicles shall be available from a distance of two hundred feet in each direction upon the highway.

This section shall not apply to the driver of any vehicle which is disabled while on the paved or main-traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving the disabled vehicle in such position.'

2 Ariz.App. at 187, 407 P.2d at 126.

The appellants contended that the area in which Salinas parked the truck was not a "paved or main-traveled part of the highway," and thus the statutory provision did not apply. They argued that the word "paved" must be read in connection with "main-traveled" and the other language in the section, and when so read the legislative intent was clear and the statute applied only to those areas of the highway intended for normal travel and not to areas intended only for parking. The appellees responded that the statute was clear, that "paved" stood alone, and that it clearly applied because Salinas parked the truck on a "paved" portion of the highway. The appellants replied with a definition based on A.R.S. § 28–149, which read: " 'Street' or 'highway' means the entire width between the boundary lines of

---

**1.** *See also Sproles v. American States Insurance Co.,* 578 So.2d 482 (Fla.App.1991), in which there was no question as to the character of the road on which the accident occurred. The issue before the court was whether the road was public or private. The court held:

We affirm the trial court in its interpretation that a "public road" means a road which has been established by an offer of dedication by a private land owner and accepted by an appropriate public body or one in which the public has acquired the right to use the land as a roadway for the length of time and under the

circumstances as provided in law relating to the acquisition of prescriptive rights and does not include privately owned lands which have been merely used by individuals under circumstances where prescriptive rights in favor of the public have not been perfected.

*Id.* at 483 (footnote omitted). The public nature of Mountain Road is not in question in this case, so we do not find the *Sproles* definition helpful.

**2.** *Modified on other grounds,* 2 Ariz.App. 348, 409 P.2d 64 (1965).

every way when any part thereof is open to the use of the public for purposes of vehicular travel." *Id.* They argued that "[i]f all 'paved' portions of the highway are covered by A.R.S. § 28–871, ... parking upon any rest areas on the highway which are paved would constitute a violation of this section and that this obviously was not intended by the legislature." *Id.*

In deciding *Salinas,* Division Two of this court took a common-sense approach:

> Despite the statutory definition contained in A.R.S. § 28–149, we do not believe the legislature intended the word "highway" in A.R.S. § 28–871 to apply to those areas of the right-of-way which are set aside for parking or are paved for purposes not intended for vehicular travel. We hold it was the legislative intent in this particular statute that *the word "highway" apply only to those areas which a reasonable person using the highway, having cognizance of all pertinent road signs and markings, would consider to be intended for vehicular travel, including the berm or shoulder of the highway if the same is improved for vehicular traffic.*

*Id.* at 188, 407 P.2d at 127 (emphasis added). The court concluded that the term "highway" could include the "berm" or "shoulder" because the particular statute at issue did not exclude that term, although the legislature had done so in another statute.[3] Furthermore, it was reasonable for the legislature to regulate that area:

> Improved shoulders on our modern, fast-traveled highways serve the obvious purpose of providing a margin for human and mechanical error, which function might be frustrated if cars were habitually parked thereon. It seems reasonable that the legislature intended by the subject statute, A.R.S. § 28–871, to regulate parking in these areas, as well as upon the roadway itself.

*Id.* The court held that there was a jury issue whether the area where Salinas parked

was reserved exclusively for emergency parking; thus, based partly on the statute, the jury could determine negligence in Salinas's failure to pull his rig farther off the highway. *Id.*

*Salinas* is not controlling in this case because we are interpreting a contractual provision rather than a statute. Nevertheless, its common-sense approach is appropriate and persuasive in this context. As we have already pointed out, when construing a contract we will apply the words as they are commonly understood. Thus, we must ask ourselves, what would the average person understand by the phrase, "public road"?

We first reject plaintiff's argument because we do not believe the average person would understand "public road" necessarily to include all points between the boundary lines of the right-of-way. The understanding of the average person would, we believe, focus on the reality of the situation, rather than the legal description of the public right-of-way. We therefore do not subscribe to the view that, just because the vehicle collided with a telephone pole that lies within the road's right-of-way, the accident necessarily happened on a public road.

On the other hand, we do not believe the average person would necessarily limit the term to only the main traveled portion of the road. In our view, a reasonable person could, under some circumstances, consider the shoulder or berm as a part of the road.

*Salinas* provides a very helpful definition: a public road means "those areas which a reasonable person using the highway, having cognizance of all pertinent road signs and markings, would consider to be intended for vehicular travel, including the berm or shoulder of the highway if the same is improved for vehicular traffic." 2 Ariz.App. at 188, 407 P.2d at 127. Because of its common-sense approach to the issue, we adopt that definition of "public road" to apply to the exclusion in this case. We thus must determine under

---

3. A.R.S. § 28–602(16) [now numbered § 28–602(17)], was quoted above in reference to the appellant's argument.

the stipulated facts, including the facts set forth in the police accident report, whether a reasonable jury could conclude that the area in which the accident occurred was "intended for vehicular travel." In our opinion, it could not.

We first note that the parties conceded that the stipulated facts are *all* the available facts. All potential witnesses to the accident are apparently unavailable. Second, it is clear that a utility pole existed at the area at which the accident occurred and, because of this obstruction, the area could not be considered to be intended for vehicular travel. However, we do not find this factor dispositive. Admittedly, if the off-road vehicle was traveling in an area intended for travel and, through some mishap, veered from this area and struck the utility pole, the fact that the utility pole was in the line of travel would not in itself preclude a finding that the accident occurred on a public road. However, there is no evidence in this record to support such a speculative scenario. In fact, the only evidence available is to the contrary. The police accident report states: "There is no pre-impact tire marks from the vehicle. Evidence at the scene indicated that the vehicle was *north bound on the west road shoulder* when it struck the power pole head on." Thus, the line of travel of the off-road vehicle was in the opposite direction to the legal flow of travel on the paved roadway, which would not be an intended use for vehicular traffic.

In addition, defendant submitted an affidavit in connection with its motion for summary judgment from Steve L. Bruflat, an engineer specializing in public work design and construction. This affidavit in pertinent part stated:

8. I reviewed the police report for the accident, the easement and right-of-way documents, along with photographs taken of the accident scene by investigating officers.

9. I also visited the scene of the accident on October 20, 1991, and took a number of measurements relating to the utility pole, berm, shoulder and pavement. The area remains virtually unchanged since the accident in 1989.

10. According to the information I gathered, the subject utility pole stood approximately two feet west of the graded shoulder of Mountain Road and fourteen feet west of the pavement.

Plaintiff presented no contrary evidence regarding these measurements, which indicate the unpaved nature of the shoulder, but rather relied upon a statutory definition that defined a "public road" as everything between the right-of-way, a definition we have rejected.

In sum, the only evidence presented was that this off-road vehicle was being operated in exactly the manner for which it was designed—off the public roads, on an unpaved portion of the shoulder, in the opposite direction from the traffic of the road.

We therefore conclude that there is no factual dispute that the vehicle was not being operated on a "public road," as that term has been defined in this opinion. Under the stipulated facts of this case, no reasonable person using the highway, being cognizant of the conditions surrounding this accident, would conclude that the unpaved shoulder of Mountain Road, where a utility pole was located, was intended for vehicular travel in the opposite direction from the flow of the road traffic. Under these circumstances, summary judgment for defendant was appropriate. *Orme School*, 166 Ariz. at 310, 802 P.2d at 1009.

The judgment of the trial court is affirmed.

FIDEL and GERBER, JJ., concur.