403 P.2d 225

Archie E. MALONE, Plaintiff-Respondent,

v.

CONTINENTAL LIFE AND ACCIDENT COMPANY, a corp., Defendant-Appellant.

No. 9549.

Supreme Court of Idaho.

June 11, 1965.

Langroise, Clark & Sullivan, Boise, for appellant.

Parry, Robertson & Daly, Twin Falls, for respondent.

SMITH, Justice.

This is an appeal from a summary judgment against appellant in favor of respondent for medical and hospital expenses incurred on behalf of respondent's wife during her lifetime until her death occurred during January, 1963, allegedly covered by a general family hospital policy, applied for October 24, 1962, and issued by appellant effective as of October 25, 1962; also for attorneys fees and costs.

Appellant assigns error committed by the trial court in entering summary judgment for respondent, and in failing to grant appellant's motion for summary judgment. Appellant raises the issue whether the loss resulted from "sickness originating while the policy is in force" as required by the policy. The facts necessary to be considered are hereinafter set out, taken from "the pleadings, depositions, and admissions on file, together with the affidavits," I.R.C.P. 56(c) of the parties in support of their respective motions for summary judgment.

During the summer of 1962, respondent's wife, Josephine, then aged 38 years, experienced a feeling of tiredness with occasional headaches; about September 1, 1962, she became afflicted by a persistent cough. On September 22, 1962, she consulted with Dr. Affleck, of Twin Falls, concerning the ailments. She returned to his office on October 1, 3, 5, 8, 11, 16 and 22, and each time consulted with the doctor except the visits of October 3 and 11. Mainly she sought relief from the persistent cough, for which the doctor prescribed various remedies.

During the visit of October 16th, Mrs. Malone directed the doctor's attention to a bulge in the right lateral wall of the vagina, which the doctor incised obtaining a bloody, purulent drainage. On October 22nd the doctor again incised that area, and removed a portion of the mass, stating that such removal was without Mrs. Malone's knowledge, and submitted it for analysis to Dr. Carle, a pathologist in Twin Falls.

On October 22nd, Mrs. Malone directed the doctor's attention to a lump in the right upper quadrant of her abdomen, beneath the costal margin. The doctor thought the lump perhaps was a prolapsed kidney. The doctor then testified that Mrs. Malone was worried about this lump in the kidney area. "This is the first time she really became a little alarmed about herself. * * * That was the first time that she then became a little panicked. * * * she began to think of cancer. This had been moving fairly fast here [the kidney area]."

Dr. Carle, after examining the material submitted, determined that it indicated the presence of a highly malignant or cancerous tumor, and on October 23rd, submitted such a report to Dr. Affleck. Later examinations and consultations determined

the origin of the tumor to be in the right kidney.

On October 25th, Dr. Affleck called Mrs. Malone to his office and, by pyelographic technique, obtained x-ray photographs of the right kidney. He stated he did not tell Mrs. Malone "too much,"—only something to the effect that he suspected some kind of a tumor. He also stated that he did not advise Mrs. Malone of the report received October 23rd from the pathologist although he stated he may have mentioned it to respondent, Mr. Malone, on October 25th.

On October 26th, Dr. Affleck referred Mrs. Malone to Dr. Davis, a urologist in Twin Falls. Dr. Davis stated he had examined the x-rays of the patient's right kidney taken by Dr. Affleck; he first saw them October 26th in Dr. Affleck's office. Dr. Davis stated that the x-rays disclosed a tumor in the right kidney which he believed to be cancerous. Mrs. Malone had suffered such condition for some time, so as to become sufficiently noticeable for diagnosis by the x-rays taken by Dr. Affleck by use of the pyelographic technique.

History taken by Dr. Davis disclosed Mrs. Malone's knowledge of her affliction of the vaginal mass about three or four weeks; she experienced difficulty with sexual relations. She mentioned frequency in urination during the previous two or three weeks. She was afflicted by a feeling of fullness or pressure in the region of her right kidney. She had suffered a chronic cough for about three months and had lost strength. All, according to the doctor, were symptoms of the malignancy, including metastatic spread of the tumor cells to the lungs. Dr. Affleck had told her on October 22nd he was going to send the tissue to Dr. Carle for examination. The testimony of Dr. Davis then appears:

"Q. Did she know that Dr. Affleck had taken a section from the vaginal area?

"A. Yes, but she hadn't a record on it yet."

Dr. Davis, after further examination in confirmation of his diagnosis, removed the right kidney by surgery on October 29th. The lower pole of the kidney was completely replaced by a large necrotic tumor, pathologically determined to be carcinoma, i. e., cancer. The doctor stated that the tumor had been present a month or longer.

Dr. Carle, the pathologist who examined the tissue taken October 22nd from Mrs. Malone, stated he was absolutely certain of his diagnosis that the tissue indicated the presence of a highly malignant tumor, originating elsewhere than the area from where the tissue was taken.

Respondent testified that he knew about his wife's visits to Dr. Affleck. She always discussed those visits with him. He stated that Mrs. Malone had a tired feeling during the summer of 1962. She had head-

aches occasionally, and it wasn't common for her to have headaches. He related the development of the cough. She didn't complain about having a lump in her right side until she went to Dr. Affleck. Soreness which she experienced, she attributed to the cough.

Respondent knew about the "minor surgery," which Dr. Affleck performed upon Mrs. Malone about the middle of October, 1962, in an attempt to remedy the vaginal tumor, designated by Dr. Affleck as an embryonic cyst, which he lanced and drained. On October 22nd he knew the doctor had advised that the cyst area was not healing and would "just have to watch it." He then related his knowledge as of October 26th of the examination by Dr. Davis on that date and the diagnosis of probable malignancy; also the subsequent surgery for removal of the right kidney.

Respondent then testified concerning the incident of his applying for appellant's general family hospital policy of insurance. Mr. Daw, appellant's agent, had learned that respondent was interested in obtaining group insurance. Pursuant to an appointment by telephone Mr. Daw met with respondent in his home, the evening of October 24, 1962. Mrs. Malone was present and could hear the conversation between the two men. In regard to the conversation with Mr. Daw, respondent testified that inasmuch as Mr. Daw inquired whether "there had been anything serious in the last year" as to afflictions of any of the persons for whom the group insurance was sought, he, respondent, did not mention his wife's October visits to the doctor because Daw wanted to know only about "the serious things." Respondent did not consider the cough as serious; nor did he consider the "minor surgery" performed by Dr. Affleck upon the vaginal mass, which the doctor called an embryonic cyst, to be serious, nor important enough to be considered as "female trouble," required to be disclosed by the insurance application. He certified in the insurance application, which he executed October 24th, that all of the persons proposed to be covered by the applied for insurance including Mrs. Malone are "now in good health and free from any impairment."

■ A summary judgment upon motion therefor shall be rendered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); Anderton v. Waddell, 86 Idaho 220, 384 P.2d 675 (1963); In re Kilgore's Estate, 84 Idaho 226, 370 P.2d 512 (1962); Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657 (1960).

■ The term sickness denotes a diseased condition; illness; ill health; or a

disordered or weakened condition in general. Price v. State Capital Life Insurance Company, 261 N.C. 152, 134 S.E.2d 171 (1964); Reserve Life Insurance Company v. Lyle, (Okl.), 288 P.2d 717, 53 A.L.R.2d 682 (1955). Sickness is any morbid condition of the body which for the time being hinders and prevents the organs from normally discharging their several functions; Horace Mann Mutual Insurance Company v. Burrow, 213 Tenn. 262, 373 S.W.2d 469 (1963); Black's Law Dictionary, 4th Ed. The "sickness" need not render the insured incapacitated. In Broccolo v. Horace Mann Mutual Casualty Company, 37 Ill.App.2d 493, 497, 186 N.E.2d 89, 91 (1962), it is stated: "A person may be 'very sick' and still carry on with his daily activities."

The evidence shows that as a part of the diagnosis of Mrs. Malone's affliction, Dr. Affleck submitted tissue taken from the patient to Dr. Carle, the pathologist, for diagnostic examination, and that upon examination Dr. Carle, as he stated, "was absolutely certain of my diagnosis as far as this being a highly malignant tumor," referring to the tissue submitted by Dr. Affleck. Further, Dr. Affleck testified in his deposition that he received a message from Dr. Carle, on October 23rd, that Mrs. Malone's tissue submitted, indicated a "highly malignant tumor." Further studies by Dr. Davis, the urologist, merely affirmed the diagnosis by Dr. Carle, the pathologist. The record thus shows that on October 22nd, the sickness or disease which unfortunately afflicted Mrs. Malone had become sufficiently manifest for diagnosis, and was diagnosed to be a highly malignant cancer.

■ The general rule is that in construing polices of the type under consideration in this cause, that the origin of a sickness or disease is deemed to be the time when it first becomes manifest or active, or when there is a distinct symptom or condition from which one learned in medicine can diagnose the disease with reasonable certainty. United Security Life Insurance Company v. Moore, 275 Ala. 642, 157 So. 2d 674 (1963); Broccolo v. Horace Mann Mutual Casualty Company, 37 Ill.App.2d 493, 186 N.E.2d 89 (1962); Dowdall v. Commercial Travelers Mutual Acc. Ass'n, 344 Mass. 71, 181 N.E.2d 594 (1962); United Security Life Insurance Company v. Hilyer, 41 Ala.App. 226, 128 So.2d 736 (1961); Allied Reserve Life Insurance Co. v. Cunningham, (Okl.), 355 P.2d 564 (1960); State National Life Insurance Company v. Stamper, 228 Ark. 1128, 312 S.W.2d 441 (1958); Richards v. American Security Life Insurance Co., (Okl.), 303 P. 2d 1110 (1956); Mutual Ben. Health & Accident Ass'n v. Ramage, 293 Ky. 586, 169 S.W.2d 624 (1943); 45 C.J.S. Insurance

§ 893; Annot. 53 A.L.R.2d 686. Here, that test is satisfied because the symptoms of the sickness which afflicted Mrs. Malone had become sufficiently manifest for diagnosis, and had been diagnosed as of a time prior to the issuance of the policy.

 Since the malignancy which afflicted Mrs. Malone was well advanced on October 24, 1962, when respondent applied for the family hospital policy, he cannot recover even though the specific diagnosis . of the sickness was not then known to respondent or his wife. This announcement is supported by Dowdall v. Commercial Travelers Mutual Acc. Ass'n, 344 Mass. 71, 73, 181 N.E.2d 594, 596 (1962), which holds:

" * * * While the definitive diagnosis was not made until later, it is apparent that the progress of the disease was well advanced when the policy was issued. Knowledge of the existence of the disease on the part of the plaintiff was not required; it was sufficient if the disease had in fact originated prior to the effective date of the policy."

We have considered appellant's remaining assignments of error, but deem it unnecessary to rule thereon in view of our disposition of this appeal.

The summary judgment of the district court is reversed and the cause remanded with instructions to grant appellant's motion for a summary judgment, and enter judgment accordingly.

Costs to appellant.

McQUADE, C. J., McFADDEN and KNUDSON, JJ., and DONALDSON, D. J., concur.