NESBITT v AMERICAN COMMUNITY MUTUAL INSURANCE COMPANY

Docket No. 205764. Submitted December 8, 1998, at Detroit. Decided June 15, 1999, at 9:05 A.M.

Clarence Nesbitt brought an action in the Wayne Circuit Court against American Community Mutual Insurance Company, alleging that the defendant had breached a medical insurance policy that it had issued to the plaintiff's now-deceased wife, Ethel Nesbitt, by refusing to cover the expenses attendant to the treatment of Mrs. Nesbitt's lung cancer on the basis that the lung cancer was a preexisting condition and that the defendant had violated the consumer protection laws of Michigan and Ohio by intentionally misrepresenting to him the meaning of the "preexisting condition" provision in the policy in order to discourage him from pursuing his cause of action. Mrs. Nesbitt had visited her physician, complaining of cough, congestion, and shortness of breath. The physician had referred her for a lung x-ray, which was performed four days later and revealed a large right pleural effusion. Five days after the x-ray, Mrs. Nesbitt filed an application with the defendant for a six-month medical insurance policy. The application indicated that there would be no benefits for a "sickness first manifested before the Policy Date." The policy issued by the defendant, which had as its effective date the date of the application, included a provision that excluded from coverage any preexisting condition, which was defined as "an illness, disease, accidental bodily damage or loss that first appears (makes itself known) before the Effective Date." Continuing medical attention of Mrs. Nesbitt ultimately led to a diagnosis of the lung cancer that led to her death three months after the date of the original visit to the physician. The defendant denied coverage of the expenses relating to the deceased's treatment for cancer on the basis of the exclusion for preexisting conditions, and the plaintiff commenced this action. The defendant moved for summary disposition of the contract claim on the basis that there was no genuine issue of fact that the deceased's illness was a preexisting condition that was not covered by the insurance policy and of the consumer protection claim on the basis that the Michigan Consumer Protection Act (MCPA), MCL 445.901 et seq.; MSA 19.418(1) et seq., did not apply to the insurance industry. The court, Timothy M. Kenny, J., granted summary disposition for the

defendant with respect to the MCPA claim, but denied summary disposition for the defendant with respect to the contract claim on the basis that there was a material question of fact concerning whether the deceased's illness was a preexisting condition. The plaintiff moved for summary disposition with respect to the contract claim on the basis that the deceased's cancer did not appear or make itself known before the policy went into effect as required by the preexisting condition provision of the policy. The court granted summary disposition for the plaintiff with respect to the contract claim. The defendant appealed, and the plaintiff cross appealed.

The court of Appeals *held*:

1. The parties agree that the interpretation of this insurance contract should be governed by the law of Ohio, the state in which the contract was executed and the Nesbitts resided. Because pertinent Ohio case law respecting the interpretation of insurance contracts comports well with the case law of this state, Ohio case law will be used to guide the resolution of the contract issue.

2. On the basis of Ohio case law, along with the case law of other states, it must be concluded that an illness is a preexisting condition within the meaning of a medical insurance policy that defines a preexisting condition as one which "appears" or "makes itself known" before the effective date of the policy if the symptoms and the medical investigation attendant to the symptoms are sufficient to provide a physician possessing the skill and knowledge of an ordinary specialist in the area with the means to ascertain the probable nature of the illness.

3. Because the trial court record contains evidence expressing opposing views whether the symptoms and x-ray results that were available before the effective date of the policy were sufficient to allow a physician the means to ascertain the probable nature of the deceased's illness, there existed a material question of fact whether the deceased's lung cancer was a preexisting condition within the meaning of the policy. Accordingly, the trial court erred in granting summary disposition for the plaintiff with respect to the contract claim, but properly denied summary disposition for the defendant with respect to that claim.

4. The case on which the trial court relied in concluding that the MCPA did not apply to the insurance industry, *Kekel v Allstate Ins Co*, 144 Mich App 379 (1985), has been overruled by *Smith v Globe Life Ins Co*, 223 Mich App 264 (1997), which held that an insurer's misconduct is actionable in a private suit brought under § 11, of the MCPA, MCL 445.911; MSA 19.418(11). There is nothing in the language of the MCPA that excludes a resident of another state who buys in another state a policy of insurance issued by a Michigan

insurer from asserting the rights protected by or from seeking the remedies provided by the MCPA. Accordingly, the trial court erred in granting summary disposition for the defendant with respect to the MCPA claim.

Affirmed in part, reversed in part, and remanded.

HOLBROOK, JR., P.J., concurring in part and dissenting in part, stated that although the trial court erred in granting summary disposition for the plaintiff with respect to the contract claim because there remains a question of fact concerning whether the deceased's lung cancer was a preexisting condition within the meaning of the policy exclusion, Ohio case law does not include a "reasonable physician" standard. Further, because the contract issue is properly decided under Ohio law, this case is not the proper case in which to determine the proper standard to be adopted in Michigan.

1. INSURANCE — MEDICAL INSURANCE — PREEXISTING CONDITIONS.

An illness is a preexisting condition within the meaning of a medical insurance policy that defines a preexisting condition as one which "appears" or "makes itself known" before the effective date of the policy if the symptoms and the medical investigation attendant to the symptoms are sufficient to provide a physician possessing the skill and knowledge of an ordinary specialist in the area with the means to ascertain the probable nature of the illness.

2. CONSUMER PROTECTION — CONSUMER PROTECTION ACT — ACTIONS — INSURANCE COMPANIES.

Section 11 of the Michigan Consumer Protection Act allows private actions to be brought against insurance companies under the provisions of the act (MCL 445.911; MSA 19.418[1]).

3. CONSUMER PROTECTION — CONSUMER PROTECTION ACT — ACTIONS — INSURANCE COMPANIES — OUT-OF-STATE INSUREDS.

A resident of another state who buys in that state a policy of insurance issued by a Michigan insurer is not excluded from the class of persons who may assert the rights protected by or seek the remedies provided by the Michigan Consumer Protection Act (MCL 445.901 *et seq.*; MSA 19.418[1] *et seq.*).

*Halbower, Mabbitt & Halbower* (by *Matthew C. Halbower*), for the plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Colleen A. O'Brien*), for the defendant.

Before: HOLBROOK, JR., P.J., and O'CONNELL and
WHITBECK, JJ.

O'CONNELL, J. Defendant appeals as of right, and
plaintiff cross appeals, from orders on motions for
summary disposition concerning plaintiff's statutory
and contract claims. We affirm in part, reverse in
part, and remand for further proceedings.

Plaintiff's wife, Ethel Nesbitt, a smoker, visited a
physician on October 16, 1993, complaining of cough,
congestion, and shortness of breath. The doctor
referred Mrs. Nesbitt for a lung x-ray, which, four
days later, indicated a large pleural effusion on the
lung. Five days after the x-ray, Mrs. Nesbitt applied
for a six-month, short-term insurance policy with
defendant. The application stated that the insurance,
if issued, would include no benefits for "sickness first
manifested before the Policy Date." Defendant issued
a policy with an effective date of October 25. The pol-
icy included a statement excluding from coverage any
preexisting condition, defined as "an illness, disease,
accidental bodily damage or loss that first appears
(makes itself known) before the Effective Date." Con-
tinuing medical attention for Mrs. Nesbitt ultimately
led to a diagnosis of lung cancer. Mrs. Nesbitt died in
January 1994.

Defendant declined to cover the expenses attend-
ant to Mrs. Nesbitt's treatment for her lung cancer,
maintaining that it was a preexisting condition. Plain-
tiff commenced the present litigation in response,
alleging both breach of contract and a violation of the
consumer protection laws of Ohio and Michigan.[1]

---

[1] Plaintiff abandoned his Ohio statutory claim, having failed to develop
it in the proceedings below or address it on appeal.

Defendant filed a motion for summary disposition, arguing that there was no genuine issue of fact that the deceased's illness was a preexisting condition that was therefore not covered by her insurance policy with defendant. Defendant also argued that the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.*, did not apply to the insurance industry. The trial court granted defendant's motion with respect to plaintiff's claim under the MCPA. However, the court found that whether the deceased's illness had been a preexisting condition was a question of material fact and denied defendant's motion in that regard.

Plaintiff then filed a motion for summary disposition, asserting that the deceased's illness did not appear or make itself known before the insurance policy with defendant was in effect. Plaintiff argued that the language of the policy was ambiguous and thus should be construed against the insurer. The trial court, upon consideration of the documentary and other evidence, granted plaintiff's motion.

The parties stipulated the entry of a final order without prejudice in order to expedite their respective appeals.

I

Defendant argues that the trial court erred in granting plaintiff summary disposition with respect to the breach of contract claim. This Court reviews a trial court's decision on a motion for summary disposition de novo as a matter of law. *Miller v Farm Bureau Mut Ins Co*, 218 Mich App 221, 233; 553 NW2d 371 (1996). When reviewing a decision on a motion under

MCR 2.116(C)(10),[2] a reviewing court must examine all relevant documentary evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists on which reasonable minds could differ. *Farm Bureau Mut Ins Co of Michigan v Stark*, 437 Mich 175, 184-185; 468 NW2d 498 (1991); *Shirilla v Detroit*, 208 Mich App 434, 437; 528 NW2d 763 (1995). Where the moving party has produced evidence in support of the motion, the opposing party bears the burden of producing evidence to establish that a genuine question of material fact exists. *Skinner v Square D Co*, 445 Mich 153, 160; 516 NW2d 475 (1994), citing MCR 2.116(G)(4). "Summary judgment should only be granted when the plaintiff's claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery." *Young v Michigan Mut Ins Co*, 139 Mich App 600, 603; 362 NW2d 844 (1984).

The parties agree that Ohio law should govern the interpretation of this insurance contract, which was executed in that state, where plaintiff and Mrs. Nesbitt resided at the time. Because the parties' reasons for applying Ohio contract law are sound, see *Chrysler Corp v Skyline Industrial Services, Inc*, 448 Mich 113, 122; 528 NW2d 698 (1995), and because the pertinent Ohio case law well comports with the case law of this state governing the interpretation of insurance contracts, we will allow Ohio case law to guide our resolution of this issue.

---

[2] The trial court did not specify the subrule under which it decided the motions for summary disposition. However, because the court looked beyond the pleadings, it is evident that the court was invoking MCR 2.116(C)(10), and we will review this issue accordingly.

"The construction of written contracts is a matter of law." *Knowlton v Nationwide Mut Ins Co,* 108 Ohio App 3d 419, 423; 670 NE2d 1071 (1996). Accord *Sunshine Motors, Inc v New Hampshire Ins Co,* 209 Mich App 58, 59; 530 NW2d 120 (1995) ("Construction of an insurance contract is a matter of law for the court."). "When the language of an insurance contract is reasonably susceptible of more than one interpretation, it is ambiguous and will be construed in favor of the insured and against the insurer." *Knowlton, supra* at 423. Accord *State Farm Mut Automobile Ins Co v Enterprise Leasing Co,* 452 Mich 25, 38; 549 NW2d 345 (1996) (ambiguities should be construed strictly against the drafter); *Fire Ins Exchange v Diehl,* 450 Mich 678, 687; 545 NW2d 602 (1996) (exclusionary clauses in insurance contracts should be construed strictly against the insurer).

Not in dispute is that before the effective date of the insurance policy, Mrs. Nesbitt came to her doctor with symptoms that led directly to an x-ray that indicated a large pleural effusion on her lung, which, after the effective date, was diagnosed as cancer. At issue is whether Mrs. Nesbitt's symptoms and the attendant medical investigation that occurred before the effective date of the policy constituted a manifestation of her lung cancer even before that specific condition was identified.

In *DeMatteis v American Community Mut Ins Co,* 84 Ohio App 3d 459; 616 NE2d 1208 (1992), a case involving the same contract language regarding preexisting conditions as the language at issue in the present case, *id.* at 461, the court held that the meaning of "first appear" was ambiguous as applied to a manifestation of a chronic condition that had generated

symptoms requiring diagnosis and treatment in previous years and that accordingly any "reasonable construction which results in coverage of the insured must be adopted by the trial court," *id.* at 463. However, the present case is distinguishable from *DeMatteis* in that there is no suggestion that Mrs. Nesbitt's cancer was similarly a manifestation of a chronic condition, and thus the holding in *DeMatteis* that the insurance contract should be read in favor of coverage does not compel that result here. Further, the convention of construing insurance policies against the drafter does not require "forced or strained construction." *Knowlton, supra* at 423. Accord *Royce v Citizens Ins Co*, 219 Mich App 537, 542-543; 557 NW2d 144 (1996), citing *Hosking v State Farm Mut Automobile Ins Co*, 198 Mich App 632, 633-634; 499 NW2d 436 (1993).

No published decisions from the appellate courts of Ohio or Michigan are precisely on point concerning whether Mrs. Nesbitt's condition was known for purposes of its coming under her policy's exclusion. However, *Goshorn v Hospital Care Corp*, 46 Ohio App 3d 47; 545 NE2d 930 (1989), counsels us to bear in mind that insurance policies exist for the purpose of sharing risks, protecting subscribers from the expenses attendant to "unanticipated," meaning "unknown," illnesses or injury. *Id.* at 48. "Implicit in this system is the understanding that the pool . . . should be able to insulate itself from known expenses." *Id.* The purpose of exclusionary provisions, then, is to "provide notice that certain expenses will not be covered. This notice fails if the provision is construed so as to exclude an unknown condition, *i.e.*, one which has not manifested symp-

toms." *Id.* Further, we find persuasive, and take additional guidance from, the pronouncements in the unreported decision of *Novak v American Community Mut Ins Co*, Docket No. 72720, 1998 WL 518166 (Ohio App),[3] which like *DeMatteis* and the present case concerned an exclusion for any condition " 'that appears (makes itself known) before the Effective Date.' " *Id.* at *3. The court determined that this exclusionary language was not ambiguous, *id.*, then considered "whether a pre-existing condition 'first appears (makes itself known)' by symptoms which are indicative of the condition or a specific diagnosis of the condition by a doctor," *id.* at *4. At issue was whether the plaintiff's coronary artery disease had been a preexisting condition. *Id.* The court held that a preexisting condition requires "more than unidentified non-specific symptoms," and that a condition "is made known when it is diagnosed or identified." *Id.* at *5. Where the plaintiff visited a doctor in response to specific symptoms and the doctor ordered further tests and advised the plaintiff that coronary artery disease was a possibility, that condition was preexisting for purposes of the insurance policy's exclusion. *Id.* In light of *Goshorn* and *Novak* from Ohio, along with persuasive cases from other states,[4] we hold that

---

[3] Unpublished or "informally published" decisions from Ohio appellate courts may be cited freely as persuasive authority. See Rule 2(G) of Ohio Supreme Court Rules.

[4] See also *Boston v Nat'l Life & Accident Ins Co*, 405 So 2d 943, 944 (Ala Civ App, 1981) ("a disease . . . will ordinarily be deemed to originate or have its inception when it first becomes manifest or active or when there is a distinct symptom or condition from which one, learned in medicine, can, with reasonable accuracy, diagnose the disease"); *Malone v Continental Life & Accident Co*, 89 Idaho 77, 83; 403 P2d 225 (1965) ("the origin of a sickness or disease is deemed to be the time when it first becomes manifest or active, or when there is a distinct symptom or condi-

an illness is a preexisting condition, in the sense that it "appears" or "makes itself known," if the symptoms and the medical investigation attendant to them are sufficient to provide a physician possessing the skill and knowledge of an ordinary specialist in the area with the means to ascertain the probable nature of the illness.[5]

In the present case, defendant maintains that Mrs. Nesbitt's cough, chest pain, and pleural effusion on the lung clearly indicated that she had at least the symptoms of lung cancer before her policy took effect. Plaintiff, on the other hand, emphasizes that Mrs. Nesbitt's cancer was not specifically diagnosed until after the effective date of the policy, arguing that because she had no reason to believe she had cancer, the condition was unknown to her and therefore not preexisting. Plaintiff further points out that Mrs. Nesbitt's physician referred her to a pulmonary specialist, not to an oncologist, suggesting that this further indicates that the doctor did not know Mrs. Nesbitt had cancer.

The trial court stated that "a formal diagnosis is not necessary," but then concluded that Mrs. Nesbitt's condition "had not in fact manifested itself with the

---

tion from which one learned in medicine can diagnose the disease with reasonable certainty"); *McDaniel v State Farm Mut Ins Co*, 3 Kan App 2d 174, 178; 591 P2d 1094 (1979) (for a disease to have "manifested" itself requires not merely "that the insured be aware of the existence of the disease" but that there be "symptoms which would lead a physician to diagnose the illness").

[5] Although in the present case Ohio case law both governs this issue and informs our analysis, we conclude that Ohio and Michigan are on equal footing with respect to their jurisprudence regarding when a condition "appears" or "makes itself known" for purposes of being excluded from insurance coverage as a preexisting condition. Thus, our conclusion holds not only for the present controversy but for this state's jurisprudence generally.

type of symptoms that would have caused a reasonable physician to conclude that lung cancer existed." Before the court were two documents in which experts announced opposing views on what Mrs. Nesbitt's prepolicy symptoms and medical investigation indicated. A letter from Mrs. Nesbitt's physician stated that Mrs. Nesbitt "did not have any symptoms to suspect Carcinoma" at first, Mrs. Nesbitt's initial suspicion being only that her coughing related to her smoking, the doctor's initial suspicion being that it may be only bronchitis. In contrast, an affidavit by defendant's expert, also a physician, stated that review of Mrs. Nesbitt's records established that her condition "made itself known and manifested itself through symptoms at least 9 days prior to the effective date of Ethel Nesbitt's insurance policy."

Defendant argues that the trial court improperly disregarded defendant's expert's indication that Mrs. Nesbitt's condition was apparent from her initial symptoms and x-ray and thus failed to recognize the existence of a material question of fact concerning whether Mrs. Nesbitt's illness was a preexisting condition. We agree. In deciding motions for summary disposition, "[t]he court may not make factual findings or weigh credibility." *Manning v Hazel Park*, 202 Mich App 685, 689; 509 NW2d 874 (1993). It is for the factfinder to determine at trial whether the prepolicy indications of Mrs. Nesbitt's illness were sufficient to allow a qualified physician to identify the probable nature of the malady. Accordingly, we reverse the trial court's grant of summary disposition with respect to this issue to plaintiff and remand for further proceedings.

Defendant further argues that the undisputed facts of record actually establish as a matter of law that Mrs. Nesbitt's condition was preexisting for purposes of the insurance policy and that the trial court thus erred in failing to grant defendant's motion for summary disposition of that issue. We disagree. Mrs. Nesbitt's physician's letter indicating that her cancer was not identifiable from the prepolicy indications creates sufficient doubts about defendant's premise to render summary disposition in defendant's favor inappropriate.[6]

II

Plaintiff argues that the trial court erred in granting defendant summary disposition with regard to the issue whether there was a violation of the MCPA. We agree.

Plaintiff alleges that defendant's agent intentionally misrepresented the meaning of "preexisting condition" to plaintiff in order to discourage him from pursuing his cause of action and that this was an unfair trade practice in violation of the MCPA. The unfair trade practices listed in subsection 3(1) of the MCPA, MCL 445.903(1);   MSA 19.418(3)(1), include the following:

> (n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

---

[6] We suspect that even most laypersons would instinctively suspect lung cancer from the combination of a smoker's cough and related discomfort that were sufficiently intense to cause the patient, a smoker, to seek medical attention and the determination through x-rays of abnormalities in the lung. Nonetheless, we leave this question for resolution by the factfinder at trial with the help of the parties' experts.

\*     \*     \*

(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

\*     \*     \*

(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

Defendant, citing *Kekel v Allstate Ins Co*, 144 Mich App 379; 375 NW2d 455 (1985), for the proposition that § 4 of the MCPA, MCL 445.904; MSA 19.418(4), rendered the act inapplicable to plaintiff's allegations, persuaded the trial court that the MCPA did not apply to the insurance industry. Plaintiff, however, cites the recent case of *Smith v Globe Life Ins Co*, 223 Mich App 264, 281-285; 565 NW2d 877 (1997), aff'd in part, rev'd in part, and remanded 460 Mich 446; 597 NW2d 28 (1999), in which this Court, citing *Attorney General v Diamond Mortgage Co*, 414 Mich 603; 327 NW2d 805 (1982), overruled *Kekel* and concluded that an insurer's misconduct is actionable in a private suit under § 11 of the MCPA, MCL 445.911; MSA 19.418(11). Defendant, in its brief in response to plaintiff's issue on cross appeal, stated that in light of *Smith* it was withdrawing its argument that plaintiff's allegations were not actionable under the MCPA. This leaves for our consideration defendant's other ground for arguing that the MCPA is inapplicable to this case—that the controversy is mainly an Ohio matter and thus lies beyond the reach of the Michigan statute.

Defendant asserts that the MCPA exists for the protection of *Michigan* consumers and therefore does not cover an insurance policy purchased in Ohio by Ohio residents. However, defendant does not dispute that its home office is in Livonia, Michigan, or that it was from its Michigan base of operations that defendant conducted all correspondence with plaintiff and his wife. Further, the language of the MCPA itself not only implies no exclusion of residents from other states, but instead implies broad applicability. "Person" is defined as "a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity." MCL 445.902(c); MSA 19.418(2)(c). "Trade or commerce" is defined as "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes . . . ." MCL 445.902(d); MSA 19.418(2)(d). We hold that any person with whom a Michigan-licensed company, operating from its home office within this state, has engaged in trade or commerce may invoke the protections of the MCPA that concern disputes arising from that trade or commerce.

Because this controversy implicates the interests of this state sufficiently to bring the MCPA to bear, and because the trial court relied on the overruled case of *Kekel, supra*, in concluding that plaintiff's allegations fell under exclusionary language of § 4 of the act,[7] we reverse the trial court's order dismissing plaintiff's claim under the MCPA and reinstate that claim.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

---

[7] In fairness to the trial court, we observe that it decided this issue without the benefit of *Smith*, which was issued after the date of the trial court's decision.

Whitbeck, J., concurred.

Holbrook, Jr., P.J. (*concurring in part and dissenting in part*). I concur with part II of the majority opinion. I also concur with part I to the extent that it affirms the trial court's denial of defendant's motion for summary disposition and reverses the grant of summary disposition for plaintiff with respect to the breach of contract claim. I write separately, however, because in my view the rule set forth by the majority regarding when a preexisting condition "appears" or "makes itself known" does not reflect the current state of Ohio law. Additionally, I dissent from the majority's holding that this same rule is now to be applied in Michigan.

The issue of when a preexisting medical condition has manifested itself is dealt with in both Ohio statutory and common law. None of these sources, however, addresses the precise situation that is now before us. Further, the unique division of appellate judicial authority in Ohio means that most of the common law identified both in this opinion and the majority opinion is nonbinding. Given these circumstances, I believe we should be particularly careful when outlining the boundaries of the applicable law.

Mrs. Nesbitt's short-term insurance policy defined the term "pre-existing condition" to "mean[] an illness, disease, accidental bodily damage or loss that first appears (makes itself known) before the Effective Date." The first question that must be addressed is whether this definition is ambiguous. If so, then under Ohio law the definition must " 'be construed strictly against the insurer and liberally in favor of the insured.' " *DeMatteis v American Community Mut Ins Co*, 84 Ohio App 3d 459, 462; 616 NE2d 1208

(1992), quoting *Blohm v Cincinnati Ins Co*, 39 Ohio App 3d 63, 66; 529 NE2d 433 (1988). Accord *Leski v State Farm Mut Automobile Ins Co*, 367 Mich 560, 567; 116 NW2d 718 (1962).

As noted by the majority, this same definition has been examined in two prior Ohio cases: *Novak v American Community Mut Ins Co*, Docket No. 72720, 1998 WL 518166 (Ohio App), and *DeMatteis, supra.* The *DeMatteis* court concluded that the language was ambiguous. *DeMatteis, supra* at 463. Conversely, the *Novak* court found the language to be unambiguous. *Novak, supra* at *3. The *Novak* court's conclusion, however, was based not on a finding that the language was inherently clear, but on deposition testimony by the plaintiff in which he admitted among other things that "he understood the short term policy would not provide coverage for pre-existing conditions." *Id.* Given the interpretations of the language adopted in *DeMatteis* and *Novak*, and given other case law addressing the more general question of what it means for a condition to manifest itself, I conclude that the definition need not necessarily be construed so as to result in coverage for Mrs. Nesbitt.

The issue then becomes one of identifying what Ohio law has to say about when a medical condition is deemed to have manifested itself. Although I have been unable to find any statutory provision that directly controls this situation, some guidance can be gleaned from the statutes that do exist. For example, the following definition is found at Ohio Rev Code Ann 3923.58(A)(3) (Anderson)(1998 Supp):

> "Pre-existing conditions provision" means a policy provision that excludes or limits coverage for charges or

expenses incurred during a specified period following the insured's effective date of coverage as to a condition which, during a specified period immediately preceding the effective date of coverage, had manifested itself in such a manner as would cause an ordinarily prudent person to seek medical advice, diagnosis, care, or treatment or for which medical advice, diagnosis, care, or treatment was recommended or received, or a pregnancy existing on the effective date of coverage.

Because the duration of Mrs. Nesbitt's policy was limited to six months, the above definition is not applicable. Ohio Rev Code Ann 3923.58(L)(Anderson)(1998 Supp). However, I find it instructive that the only reasonable person standard found in the above definition refers not to what a reasonable physician would make out of any manifested symptoms of a condition, but to whether a reasonable policyholder would seek treatment when faced with such symptoms.

Guidance can also be found in Ohio Rev Code Ann 3923.04 (Anderson), which sets forth several standard provisions that are to be included in medical insurance policies. Subsection B(2) states:

No claim for loss incurred or disability (as defined in this policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

No chronic disease or chronic physical condition may be excluded from coverage of a policy of sickness insurance or from the sickness insurance coverage of a policy of sickness and accident insurance except by name or specific description.

As interpreted by Ohio courts, see, e.g., *Fisher v Golden Rule Ins Co*, 60 Ohio St 3d 148, 150; 573 NE2d 650 (1991), a condition, be it acute or chronic, may be excluded by a general exclusionary clause for preexisting conditions within two years of the issuance of the insurance policy. Therefore, because Mrs. Nesbitt's claim was filed within this two-year period, the insurance policy did not need to specifically name or describe those conditions that would be excluded from coverage because they were preexisting.

Together, §§ 3923.04 and 3923.58 also inform us that the Ohio legislature has concerned itself with the task of balancing the twin goals of (1) protecting insurance companies doing business in Ohio from fraud perpetrated by policyholders and (2) safeguarding the right of policyholders to receive the benefits for which they contracted.

Turning to Ohio common law, the majority concludes that the relevant case law can be summed up in the following rule:

> [W]e hold that an illness is a preexisting condition, in the sense that it "appears" or "makes itself known," if the symptoms and the medical investigation attendant to them are sufficient to provide a physician possessing the skill and knowledge of an ordinary specialist in the area with the means to ascertain the probable nature of the illness. [*Ante,* p 223-224.]

In support of its formulation of the above rule, the majority cites *Novak, supra.*[1] In *Novak*, the court made the following observations:

---

[1] In *Nutter v Concord Twp Bd of Zoning*, Docket No. 92-L-118, 1993 WL 256808 (Ohio App), the Eleventh District Court of the Ohio Court of Appeals observed that under Ohio Supreme Court Rules, any court is free

> The second issue to be addressed is whether a preexisting condition "first appears (makes itself known)" by symptoms which are indicative of the condition or a specific diagnosis of the condition by a doctor. *We find the latter argument more persuasive than the former.* [*Novak, supra* at *4, quoting the policy at issue (emphasis added).]

I read this passage to mean precisely what it says: the phrase "first appears (makes itself known)" means that the alleged preexisting condition must be specifically diagnosed for the condition to have manifested itself. The *Novak* court further explains that the term "specific diagnosis" does not mean that the attending physician must have arrived at a final diagnosis. Rather, the *Novak* court considered it sufficient that the plaintiff in that case was told by his doctor at the time of the plaintiff's examination that his "symptoms were consistent with coronary artery disease." *Id.*

The *Novak* court also observed that the facts in the case distinguished it from *Sheeler v Administrator, Ohio Bureau of Workers' Compensation*, 99 Ohio App 3d 443; 651 NE2d 7 (1994). *Novak, supra* at *5. In *Sheeler*, the court observed that " '[i]n order for a condition to pre-exist, it must *manifest itself. That means the individual knew of the condition due to prior diagnosis, or was aware of the problem.*' "

---

to cite an unpublished opinion from any judicial district within the state. *Id.* at *2. "While unpublished opinions from another judicial district may not constitute binding authority," the court continued, "they are commonly cited as persuasive authority and the analysis therein may be adopted by any court where there is no binding authority to the contrary." *Id.* The record indicates that plaintiff and his wife lived in the eleventh judicial district when the insurance contract was executed. I have been unable to locate any binding authority from that district addressing the issue under examination. Therefore, like the majority, I will cite as persuasive unpublished opinions from districts other than the eleventh judicial district.

*Sheeler, supra* at 450, quoting *Thomsett, Insurance Dictionary* (1989) 159 (emphasis added). The *Novak* court distinguished *Sheeler* in the following way:

> Plaintiff also cites *Sheeler* . . . for the proposition that a pre-existing condition is made known when it is diagnosed or identified. Plaintiff claims that this means more than unidentified non-specific symptoms are required to establish a pre-existing condition. Plaintiff is correct. In the instant case, there was more than unidentifiable non-specific symptoms. There was specific identification of symptoms by the plaintiff, there was an examination by a doctor, and the doctor indicated to plaintiff his symptoms were clearly indicative of coronary artery disease. Therefore, plaintiff's reasoning is correct but simply misplaced. [*Novak, supra* at *5.]

Nowhere in *Novak* or *Sheeler* do the courts speak of a "reasonable physician" standard.

Such a standard is also not found in *Goshorn v Hospital Care Corp*, 46 Ohio App 3d 47; 545 NE2d 930 (1989). In *Goshorn*, the plaintiff "was diagnosed and treated for a prolapse of the posterior leaflet of the mitral valve" approximately two weeks after her insurance contract had gone into effect. *Id.* at 47.[2] The plaintiff also "had been examined and treated for chest pains by a heart specialist shortly before the effective date of the policy." *Id.* at 47, n 2. The *Goshorn* court upheld the trial court's finding that this earlier treatment was for a condition that was unrelated to the plaintiff's mitral valve problem. *Id.* The *Goshorn* court concluded that because the plaintiff neither

---

[2] The plaintiff's insurance contract defined a preexisting condition as " 'an illness, injury, or condition (including maternity) which exists on the effective date of the coverage.' " *Id.* at 48, quoting the insurance contract at issue.

knew of her congenital condition nor had manifested any specific symptoms of the problem before her hospitalization, the preexisting condition exclusion at issue was not applicable. *Id.* at 47-48.[3]

From these sources, I distill the following general principles: (1) if the policyholder has no actual knowledge, and has manifested no specific symptoms of a condition before the issuance of the policy, then the condition cannot be considered to be a preexisting condition within the meaning of the coverage exclusion of the policy; (2) the fact that a policyholder has not sought treatment for the condition is not dispositive, if the evidence establishes that the policyholder was aware of the problem before the issuance of the policy by the presence of specific symptoms; (3) if the policyholder sought treatment and was given either a tentative or final diagnosis before the execution of the policy, then the condition is a preexisting condition within the meaning of the coverage exclusion of the policy; and (4) if the policyholder sought treatment and was not given a specific diagnosis, and there is nothing about the symptoms themselves that would alert a reasonable person to the existence of the condition, then the condition is not a preexisting condition within the meaning of the coverage exclusion of the policy.

Under the facts of the case before us, I conclude that reasonable jurors could disagree concerning whether Mrs. Nesbitt's lung cancer was a preexisting condition for the purpose of the coverage exclusion of her policy. Ramamurthy N. Alam, M.D., the doctor

---

[3] The onset of the plaintiff's symptoms and the final diagnosis of the condition were relatively contemporaneous, and both occurred after the insurance policy was executed. *Goshorn, supra* at 47.

who first treated plaintiff on October 16, 1993, averred that (1) Mrs. Nesbitt did not "display any symptoms to suggest a diagnosis of carcinoma" before October 25, 1993, and (2) "Mrs. Nesbitt was not diagnosed with having lung carcinoma until November, 1993." The lower court record also includes a letter signed by Dr. Alam in which he states that the symptoms Mrs. Nesbitt displayed on October 16, 1993, "were suggestive of Bronchitis and she was given appropriate treatment." The fact that Dr. Alam tentatively diagnosed bronchitis is supported by contemporaneous office records made after Mrs. Nesbitt's October 16, 1993, examination.

However, when her symptoms persisted, Dr. Alam sent Mrs. Nesbitt to get a chest x-ray on October 20, 1993. The x-ray revealed a large right pleural effusion. A pleural effusion is defined as: "An accumulation of fluid in the space between the membrane (pleura) which covers the lung and the membrane (pleura) which lines the inner surface of the chest wall." *Attorneys' Dictionary of Medicine and Word Finder* (1999), volume 4 at P-295. The major causes of pleural effusions include:

> (1) Congestive heart or circulatory failure . . . . (2) Tumors (benign or malignant). (3) Infections (tuberculous and nontuberculous). (4) Fungus infections . . . . (5) Rupture of esophagus (gullet). (6) Chylothorax . . . . (7) Pulmonary embolism . . . . (8) Trauma (injury). (9) Rheumatoid arthritis. (10) Collagen disease . . . . (11) Subphrenic abscess (abscess under diaphragm). (12) Hepatic (liver) abscess. (13) Cirrhosis of liver . . . . (14) Pneumonia. (15) Nephritis . . . . (16) Pacreatitus (inflammation of the pancreas). (17) Ovarian fibroma (tumor of ovary). [*Id.* at P-295 to P-296.]

The x-ray results indicate that an "[u]nderlying infiltrate[4] or mass cannot be excluded."

Whether given the treatment she received Mrs. Nesbitt's condition can be considered to have manifested itself before the issuance of her policy is a question that should be left to the trier of fact. Also unanswered by the facts before us is whether the observation that an "[u]nderlying infiltrate or mass cannot be excluded" constitutes a tentative diagnosis that put Mrs. Nesbitt on notice that she might have lung cancer. Therefore, viewing the documentary evidence in a light most favorable to defendant as the nonmoving party, I conclude that a genuine question of material fact exists with regard to whether Mrs. Nesbitt's lung cancer had appeared before the issuance of the policy.

I do not criticize the soundness of the rule announced by the majority. As they note, several other courts from different states have also applied a reasonable physician standard in cases involving exclusions for preexisting conditions. However, our concern is not to determine in general what would be the best rule for resolving when a preexisting condition "appears" or "makes itself known." Our concern is to determine what Ohio law has to say about the issue and then to apply that law accordingly. The "reasonable physician" standard may be a logical next step in the evolution of Ohio law, but that is a step for the Ohio courts—not this Court—to take.

I also believe that it is inappropriate for us to use this case as a vehicle to hold that the "reasonable

---

[4] An infiltrate is defined as: "1. To pass into, or invade, a tissue or structure; said of a fluid. 2. The material that has passed into a tissue." *Attorneys' Dictionary of Medicine and Word Finder, supra*, volume 3 at I-89.

physician" rule will now be followed in Michigan. *Ante,* p 224, n 5. Both the majority and this opinion are based on an examination of the relevant law from Ohio. No search has been made for Michigan authority that addresses the issue, and, given the circumstances of this case, I do not believe such a search is warranted. While the rules of contract interpretation and construction are similar in Michigan and Ohio, that does not mean that in light of our unique jurisprudential and legislative history we would necessarily arrive at the same conclusion with regard to the matter as the Ohio courts.

For example, there is the case of *Karagon v Aetna Life Ins Co,* 58 Mich App 677; 228 NW2d 515 (1975). The plaintiff in *Karagon* was insured under a group policy that excluded coverage for

> "disability commencing during the first twelve months of the employee's current period of insurance . . . if the disability is caused or contributed to by or as a consequence of, a disease . . . for which the employee received treatment or services, or took drugs or medicines which were prescribed or recommended by a physician." [*Id.* at 678, quoting policy at issue.]

The plaintiff was initially "treated for a right carotid kink." *Id.* Approximately thirteen months after the onset of symptoms, it was established that the plaintiff was suffering from multiple sclerosis. *Id.* The trial court determined that the plaintiff was foreclosed by the policy's exclusion provision. *Id.* at 679. The *Karagon* Court reversed the holding of the trial court, reasoning as follows:

> So, in this case, if the disease or injury for which the employee previously received treatment or services is to be

covered by the exclusion, *it must have been correctly diagnosed and appropriately treated* during the period covered by the exclusion. When, as here, the disease does not manifest itself with sufficient clarity to allow such an accurate diagnosis and treatment before the exclusion time has run, the exclusion cannot be made to apply because some of the symptoms were treated before the disease was recognized. [*Id.* at 679 (emphasis added).]

Whether *Karagon* supports, contradicts, or limits the "reasonable physician" rule announced by the majority remains unanswered. See also *Mayer v Credit Life Ins Co*, 42 Mich App 648, 650-651; 202 NW2d 521 (1972).[5] I believe the Court would be wise to wait until we are presented with a similar issue that directly implicates substantive Michigan law before announcing a general rule that will bind future courts of this state.

Accordingly, I would affirm the trial court's denial of summary disposition for defendant with respect to the breach of contract claim, reverse the trial court's grant of summary disposition for plaintiff with respect to the breach of contract claim, and reverse the trial court's grant of summary disposition for defendant with respect to the claim brought under the Michigan Consumer Protection Act. I also would not adopt as binding standards derived from Ohio law.

---

[5] Like the plaintiff in *Karagon*, the plaintiff in *Mayer* had initially been misdiagnosed. *Mayer, supra* at 649. The *Mayer* Court concluded that "[s]ince defendant required no physical examination, it took the chance that the plaintiff, not being learned in medicine, would misinterpret his own symptoms or would rely on past erroneous diagnoses made of his condition." *Id.* at 650-651.