42 P.3d 692

Troy C. GRAVATT and, Darlyn Gravatt, husband and wife, Plaintiffs–Respondents,

v.

REGENCE BLUESHIELD OF IDAHO, an Idaho corporation, Defendant–Appellant.

No. 27276.

Supreme Court of Idaho, Twin Falls, November 2001 Term.

Feb. 26, 2002.

Parsons, Smith, and Stone, Burley, Idaho for appellant. William A. Parsons argued.

Pedersen, Clark and Jackson, Twin Falls, for respondents. Eric R. Clark argued.

SCHROEDER, Justice.

Troy Gravatt (Gravatt) was insured under a policy with Regence Blue Shield. The question presented to the district court was whether he had a preexisting condition at the time the policy was issued that precluded him from coverage until a waiting period had passed. On cross-motions for summary judgment the district court ruled that Gravatt did not have a preexisting condition and that he was not precluded from coverage by the waiting period. Consequently, he was covered under the policy of insurance. The decision of the district court is reversed.

## I.

### FACTUAL BACKGROUND

Gravatt suffered from numbness, tingling and reduced motor skills in his right hand, forearm and right leg when he applied for the Regence Blue Shield (Regence) health insurance policy in 1998. At that time, he was diagnosed as having "thoracic outlet syndrome." He had suffered varying degrees of discomfort and difficulty for approximately a year. He applied for the insurance policy at the urging of his employer, because the employer determined that the condition warranted a different policy from its normal policy. Gravatt disclosed the thoracic outlet syndrome diagnosis on the application, and when the policy became effective, he paid an extra premium as a consequence. The policy contained a one year exclusion/waiting period for preexisting conditions. The policy was effective February 1, 1998. Prior to expiration of the waiting period, Gravatt's symptoms were diagnosed as being caused by a tumor. The tumor was removed, and the symptoms stopped. Regence did not provide coverage for the medical expenses related to the removal of the tumor, reasoning that the tumor was the same condition as the thoracic outlet syndrome and was, therefore, a preexisting condition excluded under the policy.

## II.

### PROCEDURAL BACKGROUND

After denial of coverage for the treatment of the tumor, Gravatt appealed the decision to the appeals board at Regence. The appeals board agreed with the denial of coverage, citing a preexisting condition. Both parties agreed to waive the arbitration clause in the policy. Gravatt initiated an action in district court, and both parties filed motions

for partial summary judgment. The district court granted Gravatt's motion and denied Regence's motion, reasoning that the tumor was a continuation of the thoracic outlet syndrome and that coverage was provided through payment of the extra premiums. Regence appealed, asserting that Gravatt had a preexisting condition as defined by the policy. Coverage, therefore, for the preexisting condition would only exist after the twelve month waiting period from the effective date of the policy.

## III.

## GRAVATT'S CONDITION IS NOT COVERED UNDER THE POLICY

### A. Standard of Review

■ This matter was before the district court on cross-motions for summary judgment. When this Court reviews the district court's ruling on a motion for summary judgment, it employs the same standard as the district court's original ruling on the motion. *Farmers Ins. Co. v. Talbot,* 133 Idaho 428, 432, 987 P.2d 1043, 1046 (1999) (citing *Smith v. Meridian Joint Sch. Dist. No. 2,* 128 Idaho 714, 718, 918 P.2d 583, 587 (1996); *City of Chubbuck v. City of Pocatello,* 127 Idaho 198, 200, 899 P.2d 411, 413 (1995)). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Mutual of Enumclaw v. Box,* 127 Idaho 851, 852, 908 P.2d 153, 154 (1995). Normally, both courts will liberally consider the record in favor of the party opposing the motion for summary judgment, drawing all reasonable inferences and conclusions supported by the record in favor of that party. *City of Chubbuck,* 127 Idaho at 200, 899 P.2d at 413. However, if both parties file motions for summary judgment relying on the same

facts, issues and theories, the parties in effect stipulate that there is no genuine issue of material fact, and that the question is one of law. *Brown v. Perkins,* 129 Idaho 189, 191–92, 923 P.2d 434, 436–37 (1996) (citations omitted). Because the question is one of law, this Court exercises free review. *Box,* 127 Idaho at 852, 908 P.2d at 154.

### B. Rules of Construction

■ An insurance policy is a contract between the insured and the insurers. Absent ambiguity, an insurance policy is governed by the same rules as applied to contracts generally. *Gordon v. Three Rivers Agency, Inc.,* 127 Idaho 539, 542, 903 P.2d 128, 131, 127 Idaho 539 (1995), *rev. denied* (citations omitted). If ambiguity is present, however, the court will consider the uneven bargaining power between the parties and will construe the ambiguous provisions in favor of the insured. *Mutual of Enumclaw Ins. Co. v. Pedersen,* 133 Idaho 135, 138, 983 P.2d 208, 211 (1999) (citations omitted). To determine ambiguity, the court must ask whether the policy is reasonably susceptible to conflicting interpretations. *Farmers Ins. Co. v. Talbot,* 133 Idaho 428, 432, 987 P.2d 1043, 1046 (1999) (citation omitted). If ambiguity is found, the court must determine "what a reasonable person would have understood the language to mean." *Id.; see also Martinez v. Idaho Counties Reciprocal Mgmt. Prog.,* 134 Idaho 247, 999 P.2d 902 (2000), *reh'g denied, Allstate Ins. Co. v. Mocaby,* 133 Idaho 593, 990 P.2d 1204 (1999).

### C. The Policy

■ *Definitions.* Both "Preexisting Condition" and "Waiting Period" are defined in the policy. The preexisting condition clause is written as prescribed by Idaho Code § 41–5208 [1]. The waiting period clause provides

1. (3) A health benefit plan shall not deny, exclude or limit benefits for a covered individual for covered expenses incurred more than twelve (12) months following the effective date of the individual's coverage due to a preexisting condition. A health benefit plan shall not define a preexisting condition more restrictively than:

(i) A condition that would have caused an ordinarily prudent person to seek medical advice, diagnosis, care or treatment during the six (6) months immediately preceding the effective date of coverage;

(ii) A condition for which medical advice, diagnosis, care or treatment was recommended or received during the six (6) months immediately preceding the effective date of coverage; or

that preexisting conditions are subject to a 12–month exclusionary period. The waiting period is waived if coverage is continuous, but new coverage under a transfer of policies is subject to the waiting period. There is no dispute that this was a transfer policy subject to the waiting period.

*Waiting Period.* The policy provides that, "Benefits For Preexisting Conditions shall only be provided after twelve (12) months of continuous coverage under this policy." There is no applicable exception to this provision. The provision is clear and unambiguous. The payment of an additional premium for coverage of the thoracic outlet syndrome did not excuse the waiting period if the thoracic outlet syndrome was a preexisting condition. Gravatt paid a higher premium to cover a known condition when coverage became effective.

### D. Case Law

There is no case in Idaho that resolves the question presented in this case. In *Malone v. Continental Life and Accident Co.*, 89 Idaho 77, 83, 403 P.2d 225, 231 (1965), the Court interpreted language in a policy that required that a sickness originate while the policy is in effect to be covered. The Court stated:

> The general rule is that in construing policies of the type under consideration in this cause, that the origin of a sickness or disease is deemed to be the time when it first becomes manifest or active, or when there is a distinct symptom or condition from which one learned in medicine can diagnose the disease with reasonable certainty.

Since the symptoms afflicting Mrs. Malone "had become sufficiently manifest for a diagnosis, and had been diagnosed as of a time prior to issuance of the policy" Mrs. Malone was not covered, even though the specific diagnosis was not known to her or her husband. 89 Idaho at 84, 403 P.2d at 228.

In Idaho, the "manifestation" theory is often used as a trigger of insurance coverage. *See, e.g., Shields v. Gardner*, 92 Idaho 423, 433, 444 P.2d 38, 48 (1968) ("liability . . . . does not occur until or at the place of the manifestation of the defect, to the damage or

injury of the user"); *Red Lion v. Indus. Special Indemn. Fund,* 122 Idaho 464, 467, 835 P.2d 1275, 1278 (1992) ("for a mental condition to constitute a preexisting permanent physical impairment in order to trigger liability . . . . there must be a physical manifestation of the mental disorder") (citations omitted), *Frank v. Bunker Hill Co.* 117 Idaho 790, 792, 792 P.2d 815, 817 (Addendum 1990) ("date of first manifestation of an occupational disease"). In *Wardle v. Int'l Health and Life Ins. Co.*, 97 Idaho 668, 671, 551 P.2d 623, 625 (1976), the Court held that a condition did not need to be disclosed because it was not "capable of diagnosis." In *Dean v. Nationwide Life Ins. Co.,* 96 Idaho 772, 774, 536 P.2d 1122, 1125 (1975), the Court held that Dean did not have to disclose a condition that had not been "diagnosed" by a physician on his insurance application.

None of the cases previously decided by this Court deal with the specific definition of a preexisting condition as defined in Gravatt's policy. The record is not clear as to whether the label of thoracic outlet syndrome was a description of symptoms that could not be accurately diagnosed or whether those symptoms could have led to an accurate diagnosis prior to issuance of the policy. Regardless, applying the known facts to the language of the policy it is clear that Gravatt sought medical care, diagnosis and treatment for the symptoms within six months prior to issuance of the policy. It is also clear that he had "a condition for which medical advice, diagnosis, care or treatment was recommended or received within a six (6) month period immediately preceding the effective date of coverage. . . ." The fact that the diagnosis and treatment did not accurately describe and deal with the symptoms afflicting Gravatt does not avoid application of the restriction within the policy. Under the terms of the policy, Gravatt had a preexisting condition, which would only be covered after the waiting period passed.

### IV.

### CONCLUSION

The decision of the district court is reversed. The appellant is awarded costs. No attorney fees are allowed.

(iii) A pregnancy existing on the effective date of coverge.

Chief Justice TROUT, Justices WALTERS, KIDWELL and EISMANN CONCUR.