# STATE OF MICHIGAN

# COURT OF APPEALS

JEREMY DROUILLARD,

Plaintiff-Appellee,

v

AMERICAN ALTERNATIVE INSURANCE
CORPORATION,

Defendant-Appellant.

FOR PUBLICATION
February 27, 2018
9:00 a.m.

No. 334977
St. Clair Circuit Court
LC No. 2015-002282-NI

Before: TALBOT, C.J., and METER and TUKEL, JJ.

TALBOT, C.J.

Defendant, American Alternative Insurance Corporation (AAIC), appeals by leave granted[1] an order denying its motion for summary disposition in this dispute over uninsured motorist coverage. We reverse and remand for entry of an order granting summary disposition in favor of AAIC.

On the evening of October 13, 2014, Jeremy Drouillard, an emergency medical technician, was involved in a single-vehicle accident while riding as a passenger in an ambulance driven by his partner, Angelica Schoenberg. Schoenberg and Drouillard were traveling westbound on Griswold in "lights and sirens mode," on their way to a service call near the intersection of Griswold and 14th Street. Schoenberg opined that she was driving less than 45 miles per hour when the ambulance suddenly struck something in the intersection of Griswold and 13th Street. She did not know what she struck until she exited the ambulance and saw drywall dust and debris scattered in the roadway. As a result of the accident, Drouillard suffered injuries to his lumbar spine and was eventually disabled from work.

The events surrounding the accident were witnessed by three bystanders, who resided in homes fronting Griswold, near the intersection with 13th Street. According to these bystanders, a white pickup truck driving on 13th Street darted across Griswold in front of the ambulance. The rapid acceleration of the truck caused a large quantity of building materials to fall from the

---

[1] *Drouillard v American Alternative Ins Corp*, unpublished order of the Court of Appeals, entered February 23, 2017 (Docket No. 334977).

truck's bed or trailer into the roadway, blocking both traveling lanes on Griswold. Shortly thereafter, the ambulance came upon the intersection and struck the building materials.

Drouillard's employer maintained insurance for the ambulance through a policy issued by AAIC, which included an endorsement for Michigan uninsured motorist coverage. The endorsement stated that AAIC would pay all amounts an insured individual was entitled to recover from the owner or driver of an "uninsured motor vehicle." Pertinent to this matter, the policy defined "uninsured motor vehicle" as follows:

"Uninsured motor vehicle" means a land motor vehicle or "trailer":

* * *

      d. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit, or cause an object to hit, an "insured," a covered "auto" or a vehicle an "insured" is "occupying". If there is no direct physical contact with the hit-and-run vehicle, the facts of the "accident" must be corroborated by competent evidence, other than the testimony of any person having a claim under this or any similar insurance as the result of such "accident".

Drouillard filed suit against AAIC on September 21, 2015, seeking uninsured motorist benefits pursuant to the above policy terms. AAIC admitted that Drouillard was an "insured" who would qualify for uninsured motorist benefits if all other terms and conditions were satisfied, but maintained that benefits were not available to Drouillard because there was no "uninsured motor vehicle" involved in the accident. AAIC moved for summary disposition on this basis, arguing that the pickup truck did not qualify as a hit-and-run vehicle and that the pickup truck did not cause an object to hit the insured ambulance. The trial court rejected both arguments, and this appeal followed.

This Court reviews rulings on summary disposition motions de novo.[2] AAIC did not identify the subrule under which it brought its motion for summary disposition. However, because AAIC challenged the factual sufficiency of Drouillard's claim and relied on evidence beyond the pleadings, we review the court's ruling under the standards applicable to MCR 2.116(C)(10).[3] The trial court may grant a motion for summary disposition under MCR 2.116(C)(10) only if "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law."[4] "A genuine issue of material fact exists when the

---

[2] *Dancey v Travelers Prop Cas Co*, 288 Mich App 1, 7; 792 NW2d 372 (2010).

[3] See *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010).

[4] *Dancey*, 288 Mich App at 7, quoting *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003) (quotation marks omitted).

record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ."[5]

"An insurance policy is similar to any other contractual agreement, and, thus, the court's role is to 'determine what the agreement was and effectuate the intent of the parties.' "[6] The Court ascertains the intent of the parties by looking to the language employed in the contract.[7] The words and phrases used should be construed in context, and this Court may consult a dictionary in order to ascertain the plain and ordinary meaning of undefined language.[8] "Every word, phrase, and clause in a contract must be given effect, and [an] interpretation that would render any part of the contract surplusage or nugatory must be avoided."[9] "If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law."[10] "A contract is ambiguous when, after considering the entire contract, its words may reasonably be understood in different ways."[11]

AAIC argues on appeal that it was entitled to summary disposition because there was no evidence that an "uninsured motor vehicle" was involved in the accident in light of the contractual definition of an uninsured motor vehicle as a vehicle that is a "hit-and-run vehicle." Specifically, AAIC argues that the common usage of the phrase hit-and-run denotes a knowledge element on the part of the driver and points to various statutes proscribing criminal penalties for a "driver of a vehicle who knows or who has reason to believe that he or she has been involved in an accident" but fails to stop at the scene.[12] Drouillard, on the other hand, contends that the phrase hit-and-run does not involve a knowledge component and suggests that a hit-and-run vehicle is involved in the accident whenever neither the driver nor owner of the vehicle can be identified.

We find it unnecessary to determine whether the phrase "hit-and-run vehicle" requires knowledge of the accident on the part of the driver because assuming, without deciding, that knowledge *is* required, the trial court correctly concluded that questions of fact remained as to that issue. On appeal, AAIC argues that the only evidence of the truck driver's knowledge

---

[5] *Dancey*, 288 Mich App at 8, quoting *West*, 469 Mich at 183 (quotation marks omitted).

[6] *Hunt v Drielick*, 496 Mich 366, 372; 852 NW2d 562 (2014), quoting *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992).

[7] *McCoig Materials, LLC v Galui Const, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012).

[8] *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 534; 676 NW2d 616 (2004); *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015).

[9] *McCoig Materials, LLC*, 295 Mich App at 694.

[10] *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 292; 778 NW2d 275 (2009).

[11] *Auto-Owners Ins Co*, 310 Mich App at 146.

[12] See MCL 257.617 through MCL 257.619.

consisted of eyewitness speculation.[13] Although it is true that "[s]peculation and conjecture are insufficient to create an issue of material fact,"[14] a fact-finder could infer from evidence other than eyewitness speculation that the driver was aware that the building materials he was hauling had fallen into the road. Although the eyewitnesses differed as to whether the building materials included lumber or consisted solely of drywall, they agreed that there was such a large amount of materials deposited in the road that the pile measured approximately two feet high. They also agreed that the accident occurred quickly after the materials landed in the roadway: one witness described the lapse of time as approximately three to five seconds; another witness estimated that it was "[m]aybe half a minute, if that"; and a third witness observed that the pickup truck had "barely cleared the intersection" before the ambulance arrived. Given the quantity of materials lost and the immediacy of the ambulance's collision, reasonable minds could differ as to whether the driver would be alerted to the loss of the building materials based on the sudden absence of weight from his vehicle and, in turn, come to realize that the lost materials had caused an accident. The trial court did not err in reaching the same conclusion.

Next, AAIC argues that the plain language of the insurance policy only provides coverage in these circumstances if the pickup truck caused an object to hit the insured ambulance. Thus, according to AAIC, it was entitled to summary disposition because the unrefuted evidence demonstrated that the ambulance struck the stationary pile of building materials—the building materials did not strike the ambulance.

As it relates to this issue, the trial court found that it was required by this Court's holding in *Dancey v Travelers Prop Cas Co* to deny AAIC's motion for summary disposition. In that case, this Court was called upon to interpret identical policy language to determine whether the plaintiff was entitled to uninsured motorist benefits after she struck a ladder in the roadway, when there was no direct evidence that the ladder had fallen from an unidentified vehicle.[15] The Court examined a line of cases involving accidents in which a vehicle came into contact with some object cast off from another vehicle.[16] It found the circumstances before it distinguishable from similar cases because there was no "objective and convincing evidence of another unidentified vehicle that could have been the source of the object that made contact with the insured vehicle."[17] Nonetheless, it affirmed the trial court's denial of summary disposition because the accident occurred on a raised overpass that was only accessible to vehicular traffic.[18] The Court reasoned that even without evidence of an identified vehicle from which the ladder

---

[13] Presumably, AAIC is referring to eyewitness testimony opining that the driver "had to feel the shift of weight," that the driver did not return because "he knew he was going to be in trouble," and that "if you lost that much weight, you could tell . . . ."

[14] *Ghaffari v Turner Const Co*, 268 Mich App 460, 464; 708 NW2d 448 (2006).

[15] *Dancey*, 288 Mich App at 11-12.

[16] *Id*. at 13-18.

[17] *Id*. at 17.

[18] *Id*. at 20-22.

may have fallen, the unique location of the accident created a question of fact "with regard to whether a substantial physical nexus exists between the ladder and unidentified hit-and-run vehicle."[19]

Importantly, the issue before the Court in *Dancey*, and the reason for its conclusion, focused on whether the plaintiff could establish a substantial physical nexus between the ladder she hit and a hit-and-run vehicle. By contrast, as it did in the trial court, AAIC asks this Court to assume for purposes of its appeal that a substantial nexus existed between the pickup truck, the building materials, and the ambulance's impact with the materials. As such, we agree with AAIC's contention that the trial court erred by concluding that it was bound to follow the outcome in *Dancey*. Although *Dancey* involved the same policy language and substantially similar facts, it did not turn on the same issue—i.e., how to give effect to the language requiring that the hit-and-run vehicle "cause an object to hit" the insured, an insured vehicle, or a vehicle occupied by an insured. Therefore, *Dancey* was not dispositive of the issue raised by AAIC.

It is evident from the plain language of the policy language that coverage is not limited to instances involving direct, physical contact with the hit-and-run vehicle. Instead, the policy states that "[t]he vehicle must hit, *or cause an object to hit*, an 'insured', a covered 'auto' or a vehicle an 'insured' is 'occupying[.]' "[20] Thus, coverage would be afforded in this case despite the absence of physical contact between the ambulance and pickup truck, as long as the pickup truck "cause[d] an object to hit" the ambulance. According to AAIC, this condition was not satisfied because the unrefuted testimony demonstrated that the pickup truck did not cause the building materials to hit the ambulance; rather, the ambulance hit the stationary building materials. We agree.

The construction of the relevant policy language reflects a clear distinction between the direct object and indirect object. Coverage is available under the policy only if the subject of the sentence (the "vehicle," meaning the hit-and-run vehicle), caused the direct object ("an object") to hit the indirect object ("an 'insured', a covered 'auto' or a vehicle an 'insured' is 'occupying' "). The order of the words in this sentence is grammatically distinct from the language that would be used to describe circumstances in which the hit-and-run vehicle caused the insured to hit an object. Interpreting the language at issue in a manner that would include those circumstances would require a "forced or constrained construction," which should be avoided.[21]

Drouillard relies on a dictionary definition of the verb "to hit" to refute this reading of the policy language. Specifically, Drouillard points to *Merriam-Webster*'s definition of "hit" which includes, in pertinent part, the meaning "to come in contact with."[22] However, it is worth noting

---

[19] *Id*. at 21.

[20] Emphasis added.

[21] *Nesbitt v American Community Mut Ins Co*, 236 Mich App 215, 222; 600 NW2d 427 (1999) (quotation marks and citation omitted).

[22] *Merriam-Webster's Collegiate Dictionary* (11th ed).

that the quoted definition is followed by an illustration of the term and definition: "to come in contact with <the ball ~ the window>[.]"[23] When such an illustration is included, the swung dash replaces the word being illustrated.[24] Thus, the definition proffered by Drouillard is best illustrated by the following usage: "the ball hit the window." Even this definition suggests a distinction between the object doing the hitting—the ball—and the object being hit—the window. In that example, it is certainly true that the ball and window came in contact with each other, but, absent extraordinary circumstances, it is improbable that a window hit a stationary ball.

Accordingly, we must conclude that the plain language of the contract provides uninsured motorist coverage to Drouillard only if the unidentified pickup truck caused an object to hit the insured ambulance, and not vice versa. Reviewing the pertinent section as a whole, the language cannot reasonably be understood in any other way. Importantly, Drouillard and Schoenberg both admitted that the building materials were stationary at the time of the accident, and Schoenberg agreed that, as the driver of the ambulance, she struck the materials in the roadway. Therefore, this is not a situation in which a hit-and-run vehicle caused an object to hit the insured ambulance, and Drouillard is not entitled to uninsured motorist benefits under the terms of the policy.

Reversed and remanded for entry of an order granting summary disposition in favor of AAIC. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Jonathan Tukel

---

[23] *Id*.

[24] *Id*. at p 19a.