# Order

Michigan Supreme Court
Lansing, Michigan

July 9, 2019

157518

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

JEREMY DROUILLARD,
        Plaintiff-Appellant,

v

AMERICAN ALTERNATIVE INSURANCE
CORPORATION,
        Defendant-Appellee.

SC: 157518
COA: 334977
St. Clair CC: 2015-002282-NI

_____/

On May 7, 2019, the Court heard oral argument on the application for leave to appeal the February 27, 2018 judgment of the Court of Appeals. On order of the Court, the application is again considered. MCR 7.305(H)(1). In lieu of granting leave to appeal, we REVERSE the judgment of the Court of Appeals, which held that summary disposition for the defendant was proper because the plaintiff was not entitled to coverage under the insurance policy's uninsured motor vehicle provision as a matter of law. See MCR 2.116(C)(10). We REMAND this case to the St. Clair Circuit Court for further proceedings not inconsistent with this order.

Uninsured motorist coverage is not statutorily mandated and, therefore, the terms of the contract control whether a claimant is entitled to benefits. *DeFrain v State Farm*, 491 Mich 359, 367 (2012). We review de novo the interpretation of an insurance contract. *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 533 (2004). "An insurance policy is enforced in accordance with its terms. Where a term is not defined in the policy, it is accorded its commonly understood meaning." *Id*. at 534. "In determining what a typical layperson would understand a particular term to mean, it is customary to turn to dictionary definitions." *Mich Millers Mut Ins Co v Bronson Plating Co*, 445 Mich 558, 568 (1994), rev'd on other grounds by *Wilkie v Auto-Owners Ins Co*, 469 Mich 41 (2003). Only "[w]here ambiguity is found" will a court "construe the term in the manner most favorable to the insured." *Id*. at 567.

The defendant's policy insuring Tri-Hospital Emergency Medical Services Corporation for the period of September 1, 2014 to September 1, 2015 includes the following in its definition of an "uninsured motor vehicle" in Paragraph (3), Subparagraph (d), of Section F, "Additional definitions":

"[A] land motor vehicle or 'trailer'

* * *

    d. [t]hat is a hit-and-run vehicle and neither the driver nor [the] owner can be identified. The vehicle must hit, or cause an object to hit, an "insured", a covered "auto" or a vehicle an "insured" is "occupying". If there is no direct physical contact with the hit-and-run vehicle, the facts of the "accident" must be corroborated by competent evidence, other than the testimony of any person having a claim under this or any similar insurance as the result of such "accident".

    The Court of Appeals erred by concluding that the unidentified truck in this case did not "cause[] an object to hit the insured ambulance" when the ambulance hit the drywall left in the road by the truck. *Drouillard v American Alternative Ins Corp*, 323 Mich App 212, 222-223 (2018). According to the Court of Appeals, the ambulance hit the object, and not vice versa, because the drywall in this case lay "stationary [in the road] at the time of the accident . . . ." *Id.* at 223. Neither party disputes that the drywall left the bed of the truck; that the drywall came to rest in the road; and that, shortly thereafter, the ambulance collided with the drywall as the drywall lay stationary in the road. Using the commonly understood meaning of the provision's terms, see *Twichel*, 469 Mich at 534, one way of triggering coverage under the provision is for an unidentified vehicle to cause an object to come in contact with a covered auto. See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "hit" as "to come in contact with <the ball [hit] the window>"). See also *Merriam-Webster's Dictionary and Thesaurus* (2007) (defining "hit" as "to make or bring into contact: collide"). That is exactly what happened when the unidentified vehicle in this case lost its load in the path of the oncoming ambulance. By depositing the drywall directly in the path of an oncoming vehicle, the unidentified vehicle caused the drywall to come in contact with the oncoming vehicle. Thus, whether the drywall was moving or was stationary at the time of the contact is not dispositive.

    We disagree with the defendant and the dissenting statement that coverage is precluded because the drywall was stationary when the collision occurred. The dissenting statement wants to reframe the issue as a theoretical semantic one, asking whether a stationary object can be said to "hit" a moving one. But in doing so, the dissenting statement fails to apply the ordinary meaning of the term "hit" or to interpret it in the context in which it appears in the policy provision at issue.[1] As discussed above,

---

[1] The dissenting statement's reference to hammers and nails, fists and noses, and golf clubs and balls does not add clarity because the word "hit" has a different meaning in those contexts than it does in the context of the policy provision in this case. As it pertains to hammers and nails (or fists and noses), the word "hit" is defined as "to deal a blow or stroke to: *Hit the nail with the hammer*." Dictionary.com, <https://www.dictionary.com/browse/hit#> (accessed July 3, 2019) [https://perma.cc/CUC7-QDKV]. See also *Merriam-Webster's Collegiate Dictionary*

we believe the pertinent inquiry under the policy is whether a vehicle that has lost its load in a roadway, thereby placing a stationary object in the path of a moving vehicle, can be said to have caused the stationary object to come in contact with the moving vehicle. When the question is properly framed, the answer is straightforward: depositing drywall directly in the path of an oncoming vehicle is sufficient to cause it to come in contact with that vehicle. Accordingly, the phrase "cause an object to hit" does not preclude coverage under the uninsured motor vehicle provision in this case merely because the drywall was stationary at the time of the accident.

Our conclusion is further supported by the presence of the word "hit" in both scenarios in which a hit-and-run accident may give rise to uninsured motorist benefits as prescribed in the second sentence of Subparagraph (d)—when an unidentified vehicle has "hit" a covered auto and when an unidentified vehicle has "cause[d] an object to hit" a covered auto.[2] The defendant concedes that, when the term "hit" appears for the first time in the second sentence, its meaning does not depend on whether the unidentified vehicle "hits" the insured vehicle, or vice versa, so long as the vehicles come into contact with each other. The defendant nevertheless argues that, when the term appears for the second time in the same sentence, coverage is available only if the object "hits" the insured vehicle, but not if the insured vehicle "hits" the object.[3] Because Subparagraph (d) does not distinguish between "hit" in circumstances involving a collision between vehicles and "hit" in circumstances involving a collision between an object and a vehicle, the defendant's argument is belied by the principle recognized in our Court that "[i]dentical language should certainly receive identical construction when found in the same act."[4] *Empire Iron Mining Partnership v Orhanen*, 455 Mich 410, 426 n 16 (1997) (quotation marks and citation omitted).

---

(11th ed) (defining "hit" in this context as "to deliver (as a blow) by action"). As it pertains to golf clubs and balls, the word "hit" means "to strike (as a ball) with an object (as a bat, club, or racket) . . . ." *Id*. We choose the contextually appropriate ordinary meaning. See *In re Erwin*, 503 Mich 1, 33 n 15 (2018) (VIVIANO, J., dissenting).

[2] The dissenting statement's disapproval of this method of construction is misguided. The sole issue before us was and is construction of Subparagraph (d), and we must therefore consider the meaning of the same word used elsewhere in the same sentence of the policy, regardless of whether a party has raised or disputed that specific construction argument.

[3] See Michigan Supreme Court, Oral Arguments in *Drouillard v American Alternative Ins Corp* <https://www.youtube.com/watch?v=OGXiXCaoEaY> at 20:19-22:33 (accessed July 3, 2019).

[4] We believe this principle applies equally to contract interpretation and probably with even more force here, where the same word is used not just in the same policy or provision of the policy, but in the same sentence. See *Twichel*, 469 Mich at 534.

MARKMAN, J. (*dissenting*).

The issue here is remarkably straightforward: whether certain drywall lying stationary on a road can properly be said to have "hit" a moving insured motor vehicle, thereby entitling plaintiff to uninsured motorist coverage. The Court of Appeals majority concluded that, while the moving vehicle "hit" the stationary drywall, the stationary drywall did not "hit" the moving vehicle and therefore plaintiff is not entitled to coverage. This conclusion makes sense, as it would be highly unorthodox in common parlance for a speaker of the American-English language to observe that a stationary object had "hit" a moving object. To take just one example, one would not ordinarily declare during a game of pick-up baseball that a window in a nearby home had "hit" a stray baseball. Rather, one would declare that the ball had "hit" the window. See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "hit" as "to come in contact with <*the ball* [*hit*] *the window*>") (emphasis added). The majority reverses the Court of Appeals and effectively holds that, as a matter of law, a stationary object can be fairly described as having hit a moving object. Because I do not believe that any reasonable speaker of our language would concur with this analysis and contend that the stationary drywall here "hit" the moving vehicle, I respectfully dissent from this Court's order reversing the decision of the Court of Appeals.

The insurance policy at issue provides coverage for an injury caused by an "uninsured motor vehicle" and further provides that an "uninsured motor vehicle" encompasses a vehicle

> that is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit, or cause an object to hit, an "insured", a covered "auto", or a vehicle an "insured" is "occupying". If there is no direct physical contact with the hit-and-run vehicle, the facts of the "accident" must be corroborated by competent evidence, other than the testimony of any person having a claim under this or any similar insurance as the result of such "accident".

Thus, the first sentence provides for coverage only if: (a) an accident is caused by a "hit-and-run vehicle," and (b) "neither the driver nor owner can be identified." The second sentence adds that the insured is only entitled to coverage if *either*: (a) the hit-and-run vehicle "hits" the insured vehicle, *or* (b) the hit-and-run vehicle "causes an object to hit" the insured vehicle. Finally, the third sentence provides a heightened evidentiary burden for claims as to which "there is no direct physical contact with the hit-and-run vehicle . . . ." For such claims, "the facts of the 'accident' must be corroborated by competent evidence, other than the testimony of any person having a claim under this or any similar insurance as the result of such 'accident'." To summarize, the first and

second sentences provide the prerequisites for coverage under the contractual provision, while the third sentence establishes a heightened evidentiary burden for a particular class of claims under the provision.

Plaintiff does not allege that the unidentified vehicle itself "hit" the insured vehicle. Thus, the question is simply whether the unidentified vehicle "cause[d] an object to hit" the insured vehicle where the drywall fell out of the unidentified vehicle onto the road and the insured vehicle struck it moments later, when the drywall was lying stationary on the road.[5] In other words, the question is whether the stationary drywall "hit" the moving vehicle. As this Court has long recognized, terms in a contract "must be interpreted by common sense and common usage, unless some special reason exists to the contrary in a given case." *Burkam v Trowbridge*, 9 Mich 209, 210-211 (1861). Any speaker of English would recognize that it is principally the moving object that "hits" the stationary one; stationary objects can be hit *by* something else, but they do not themselves do the hitting. Once again, the window does not *hit* the ball, just as the nail does not *hit* the hammer, the golf ball does not *hit* the golf club, the nose does not *hit* the fist, and the fire hydrant does not *hit* the vehicle careening into it. As the Court of Appeals majority aptly noted:

> [T]he relevant policy language reflects a clear distinction between the direct object and the indirect object. Coverage is available under the policy only if the subject of the sentence (the "vehicle," meaning the hit-and-run vehicle), caused the direct object ("an object") to hit the indirect object ("an 'insured', a covered 'auto' or a vehicle an 'insured' is 'occupying' "). The order of the words in this sentence is grammatically distinct from the language that would be used to describe circumstances in which the hit-and-run vehicle caused the insured to hit an object. Interpreting the language at issue in a manner that would include those circumstances would require a "forced or constrained construction," which should be avoided. [*Drouillard*, 323 Mich App at 221-222.]

---

[5] Judge TUKEL's concurrence in the Court of Appeals raises a substantial argument that a "hit-and-run vehicle" is one in which a driver of a vehicle hits another vehicle, recognizes that he has hit that other vehicle, and then runs immediately thereafter in order to flee the scene of the accident. See *Drouillard v American Alternative Ins Corp*, 323 Mich App 212, 223-229 (2018) (TUKEL, J., concurring). However, the proper interpretation of a "hit-and-run vehicle" need not be addressed in this case, as I agree with the unanimous conclusion of the Court of Appeals (including Judge TUKEL himself) that even if this interpretation of a "hit-and-run vehicle" is correct, there remains a question of fact as to whether the driver of the unidentified vehicle was cognizant of the accident prior to leaving the scene. Accordingly, plaintiff is not, as a matter of law, precluded from coverage on this basis.

This commonsense understanding of the term "hit" is supported by empirical data from the Corpus of Contemporary American English (COCA). While this data is not without its limitations, this Court has recognized it as a tool to "analyze[] ordinary meaning through a method that is quantifiable and verifiable." *People v Harris*, 499 Mich 332, 347 (2016) (quotation marks and citation omitted). COCA enables users to search more than 560 million words spread evenly across 1990–2017 to discover linguistic patterns and exercises of common usage. Its remarkably comprehensive database includes transcripts of live television broadcasts, newspapers, magazines, academic journals, and fiction. Davies, Corpus of Contemporary American English <https://www.english-corpora.org/coca/> (accessed June 25, 2019) [https://perma.cc/Y7KA-SHK3]. Of the 1,895 relevant excerpts in COCA in which the word "hit" (employed as a verb) is collocated within four words of objects that are generally stationary (a wall, a fence, a guardrail, a nail, a curb, a post, a mailbox, a floor, the ground),[6] there are only thirteen excerpts at the most-- approximately .68% of all relevant excerpts-- that could even arguably be interpreted as communicating that a stationary object can "hit" something else.[7] The remaining 1,882 excerpts-- approximately 99.3% of all relevant excerpts-- describe the stationary object as being

---

[6] The number of excerpts in COCA in which the verb "hit" appears within four words to the right or the left of the relevant search term (used as a noun) for each term, in order from the most to the fewest number of excerpts, is: ground (1,174), wall (637), floor (549), nail (207), fence (48), post (44), curb (25), guardrail (12), and mailbox (10). Because of the high volume of results for the search involving the words "hit" and "ground," I analyzed only an entirely randomly selected 500-excerpt sample for this opinion. For the other search terms, I analyzed every excerpt in the database. Of the 2,032 excerpts I analyzed, 137 of them, for various reasons, did not support either party's position. For example, in the search for the words "hit" and "post," there were excerpts in which the word "hit" was within four words of "The Washington Post." Because the word "hit" was used in conjunction with a proper noun rather than a stationary object, these excerpts did not assist in determining whether the stationary object does or does not "hit" the moving object in ordinary usage. Additionally, there were some excerpts in which "hit" and the search term appeared in different sentences and therefore there was no relationship between "hit" and the search term to analyze.

[7] Of the thirteen excerpts that could arguably support the majority's conclusion, four of these compare something moving as hitting something else "like a wall," for example, "the howling rush of air hit like a wall." While the fact that something moving is described as "hitting" something "like a wall" arguably suggests that a stationary wall can "hit" something, this is dubious support for the conclusion that a stationary wall "hits" something else. Rather, this phrase appears to be an essentially literary or metaphorical device whereby emphasis is given to the proposition that something being hit by a moving object with sufficient force has *effectively* hit the moving object.

"hit" by something else, not as doing the "hitting." These data reinforce what I believe is already a commonly understood proposition: in common American-English parlance, the moving object "hits" the stationary object; the stationary object does not "hit" the moving object.

The majority rejects this reasoning, concluding that because the word "hit" can be defined as "come in contact with," and the drywall "c[a]me in contact with" the insured vehicle, the drywall thus "hit" the insured vehicle and plaintiff is entitled to coverage. *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "hit" as "to come in contact with <the ball [*hit*] the window>"). However, this understanding of "hit" is hardly contrary to the common understanding explained above. The majority seems to presume that the phrase "come in contact with" itself does not require movement or the terminus of a process, but simply identifies an occurrence, i.e., that to "come in contact with" signifies one item contacting another, regardless of which item had been "moving" when the contact occurred. But definitions of the word "come" and "in" indicate that only a moving object actually "hits" another. The first two definitions of the word "come" in the same dictionary employed by the majority require motion. *Id.* ("to move toward something: approach <[*come*] here>"; "to move or journey to a vicinity with a specified purpose <[*come*] see us> <[*come*] and see what's going on>"). Moreover, "in" can be defined as the equivalent of the first definition of "into," which is "a function word to indicate entry, introduction, insertion, superposition, or inclusion <came [*into*] the house>." *Id.* These definitions strongly suggest that an object only "come[s] in contact with" another if the contact is the product of that object *moving* to contact the other.[8]

Admittedly, some of the dictionary definitions of "in" and "come" in *Merriam-Webster's Collegiate Dictionary* could be pasted together in a manner that sustains the majority's position, i.e., that a stationary object can "hit" a moving object. However, other definitions (as well as a reasonable understanding of actual use of the English language) are compatible with defendant's conclusion, i.e., that only a moving object "hits" another object. Additionally, the sentence provided with the dictionary definition cited by the majority-- "the ball hit the window"-- supports defendant's understanding. It appears clear that in this example the object doing the hitting-- the ball-- is in motion while the object being hit-- the window-- is stationary. The stationary window is not

---

[8] The majority also cites *Merriam-Webster's Dictionary and Thesaurus* (2007), which defines "hit" as "to make or bring into contact: COLLIDE." However, this definition is also not necessarily inconsistent with common understandings, given that the word "collide" is defined as "to come together with solid impact" and "come" is defined, in part, as "to move toward something: APPROACH." *Id.* Thus, this definition also contributes little to the majority's argument, as it also requires the hitting object to be in motion at the time the physical contact occurs.

hitting the moving ball, the moving ball is hitting the stationary window. Thus, the majority's dictionary definitions, far from contradicting defendant's position, affirmatively support that position.

Moreover, as this Court has recognized, "the dictionary should be seen as a tool to facilitate [legal] judgments, not conclusively resolve linguistic questions. . . . The dictionary is but one data point; it guides our analysis, but it does not by itself settle it." *In re Estate of Erwin*, 503 Mich 1, 19-20, 21 (2018). Reference to dictionary definitions is valuable precisely because it provides *evidence* as to a term's common usage. *People v Morey*, 461 Mich 325, 330 (1999) ("[W]e may turn to dictionary definitions to aid our goal of construing those terms in accordance with their ordinary and generally accepted meanings.") In other words, a dictionary can help this Court *determine* a term's common usage, but a dictionary cannot *supplant* or *nullify* a term's common usage. See *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 356 (1999) (holding that when interpreting a contractual provision, this Court must "determine what the phrase conveys to those familiar with our language and its contemporary usage," which may not be completely reflected in dictionary definitions). At the very least, when dictionary definitions might conceivably support either of the two proffered interpretations (and even this is a highly favorable conclusion to the majority in the present circumstance), this Court is bound to apply the interpretation that is *most* consistent with common usage.

The majority fails entirely to explain why its preferred definition of "hit" is more consistent with common usage than the understanding that only a moving object can "hit" another object. The majority's only support for this holding is grounded in defendant's concession as to an issue that is entirely extraneous to the issue in this case.[9] Specifically, the majority argues that because defendant concedes that when an accident involves two moving vehicles it does not matter which vehicle does the "hitting," and the

---

[9] The majority rightly declines to endorse plaintiff's argument that the phrase "direct physical contact" in the third sentence of the relevant provision compels the conclusion that "hit" as used in this policy is synonymous with "direct physical contact." As discussed above, the third sentence merely heightens a claimant's *evidentiary* burden for a particular class of claims under the provision; it does not define the threshold circumstances under which a party is entitled to coverage under the policy. In other words, the third sentence defines what quantum of evidence must be provided to demonstrate the occurrence of a situation entitling a claimant to coverage under the policy but does not define the circumstances under which that claimant is entitled to coverage. Accordingly, the third sentence cannot reasonably be understood to define the term "hit" as used in the preceding sentence. While parties to a contract are certainly free to define a contractual term in whatever esoteric manner they desire, the instant provision here does not do so, and therefore we must define the term "hit" consistently with common usage.

term "hit" should be interpreted consistently throughout different parts of the insurance policy, it stands to reason that it is irrelevant whether the object "hit" the vehicle or vice versa. I agree with the majority that as a general proposition identical terms in an insurance contract should be interpreted consistently. However, the issue here is the distinct one of whether the stationary drywall "hit" the moving vehicle, and defendant did not concede that a stationary vehicle can "hit" a moving vehicle, but only that it was irrelevant *which* of two moving vehicles did the "hitting." Thus, I fail to see how this concession supports the majority's conclusion that a stationary object can hit a moving object.

Moreover, even if this Court could somehow conclude that defendant had conceded that a stationary vehicle can "hit" a moving vehicle, how and why should this concession affect the interpretation of the relevant contractual term? Neither party contends that two vehicles here contacted each other, and therefore neither briefed the appropriate definition of the word "hit" in relation to collisions between multiple vehicles.[10] However, defendant clearly argues that the drywall did not "hit" the insured vehicle because the drywall was lying stationary on the road. Assuming that defendant wrongly presumes that the term "hit" has a different meaning when applied to physical contact between multiple vehicles than it does when applied to physical contact between a vehicle and a stationary object, that does not mean as a result that defendant is incorrect in arguing that a "hitting" object must be in motion. In other words, even if defendant wrongly argued that the common usage of "hit" applies only in the context of one provision, when it should for the sake of consistency apply in the other context as well, defendant remains correct in its reasoning as it applies to *this* case. I would decline to employ the majority's attenuated reasoning, especially when the result of this reasoning is plainly to misinterpret the unambiguous contractual provision at issue.

In conclusion, the proper disposition of this case turns on one specific issue: whether the stationary drywall can properly be said to have "hit" the moving insured motor vehicle. It is reasonably clear to most speakers of American English that a stationary object does not "hit" a moving object, i.e., that the window does not "hit" the ball. This understanding is fully consistent with the dictionaries utilized by the majority in support of its contrary conclusion, as these indicate that only a moving object can "hit" another object. Because the parties concede that the drywall was altogether stationary when the accident occurred, the unidentified vehicle did not cause an object to "hit" the insured vehicle and therefore plaintiff is not entitled to coverage under the policy. Plaintiff argues that it is "senseless" to base coverage under the policy on whether

---

[10] This issue appears to have been raised for the first time in an amicus brief filed by the Michigan Association for Justice five days before oral argument.

an object was stationary or in motion when it contacted the insured vehicle. However "senseless" one might find this distinction, it is this Court's responsibility to enforce contractual provisions, not to rewrite them in a manner that is consistent with the Court's own sense of fairness and to further erode what should be a disciplined and faithful process by which this Court gives meaning to disputed contracts.

ZAHRA, J., joins the statement of MARKMAN, J.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 9, 2019



Clerk

t0708